773 So.2d 615 (2000)
D.D. as Parent of E.R., a child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D00-1305.
District Court of Appeal of Florida, Fifth District.
December 8, 2000.
*616 Barton W. Hogreve, Rockledge, for Appellant.
Kelly A. Swartz, Department of Children and Families, Cocoa, for Appellee.
PALMER, J.
D.D. (the father) appeals the final order entered by the trial court adjudicating his five year old daughter, E.R., dependent.[1] The adjudication of dependency was based on the court's finding of prospective neglect. We affirm, concluding that the instant record supports both the findings of fact made, and conclusions of law reached, by the trial court.
The instant dependency petition alleged that, by remaining in her father's custody, E.R. was at risk of being significantly impaired, both mentally and emotionally. To support this claim, the petition averred that E.R. had witnessed multiple incidents of domestic violence, both physical and verbal, between her parents and that such violence constituted proof of prospective neglect sufficient to support a determination of dependency.
During the dependency hearing the State presented the testimony of multiple witnesses concerning incidents of verbal and physical abuse perpetrated by the child's father upon the child's mother. The court heard testimony that the child usually watched the fights between her parents and that, on at least one occasion, she witnessed a physical altercation between them. The court also heard testimony from the child concerning incidents of domestic violence between her parents which she had witnessed and from the mother stating that she and the father would be together in the future as a couple.
Upon consideration of the evidence, the trial court adjudicated E.R. to be dependent on the basis of prospective neglect. The court found that the child was at risk of being significantly impaired, mentally and emotionally, if she remained in the custody of the father, basing its conclusion on the fact that the child had witnessed her father's abuse against her mother during the period of time when the parties were a couple, and that the mother and father were more likely than not to continue their relationship in the future. The court opined that, due to the likelihood that the parents would resume their relationship, it was similarly likely that the mother would in the future be abused by the father in the presence of the child, unless changes were made. To support its ruling the court highlighted the following factors:
a. The court's determination from its observation of the child during her testimony that she had already been affected by the fact that she had witnessed her father's abuse of her mother, in that she was sad, scared, apprehensive and reluctant to discuss the matter.
b. The father's lack of reluctance to commit acts of physical abuse in front of the child and her brother in the home and to commit acts of physical abuse in public.
c. The court's determination that, more likely than not, the parents will reunite and that unless the father obtains treatment and changes his conduct, he is likely to continue to physically abuse the child's mother in the child's presence and that such abuse would, more likely than not, significantly impair the child's emotional and mental well-being.
d. The controlling nature of father's conduct against the child's mother, including intercepting her mail, accusing her of improper relationships with friends, cutting her off from family and friends, and intimidating and scaring her.
The father challenges the trial court's ruling, first arguing that the court's finding *617 of dependency was in error "because there was no medical testimony regarding the actual or potential mental or emotional harm to the child." He essentially claims that, without expert testimony, the State could not establish its claim of prospective neglect. In a somewhat related claim, the father further argues that the evidence before the trial court failed to support a finding of prospective neglect because the only evidence presented by the State was evidence of the father's abuse of the mother. He maintains that such evidence failed to support a finding that the child was at risk of suffering either prospective abuse or prospective neglect.
As a threshold matter we note that the "trial court's discretion is very broad with respect to proceedings involving child welfare." D.H. v. Department of Children & Families, 769 So.2d 424 (Fla. 4th DCA 2000). To that end, "[i]n reviewing an order adjudicating a child dependent, this court does not conduct a de novo review of evidence or substitute its judgment for that of the trial court." In re D.J.W., 764 So.2d 825, 826 (Fla. 2nd DCA 2000). An adjudication must be upheld if the trial court's findings of fact are supported by competent substantial evidence. Id.
Section 39.01(46) of the Florida Statutes (1999) defines neglect for purposes of dependency proceedings as follows:
39.01 Definitions.When used in this chapter, unless the context otherwise requires:
* * *
(46) "Neglect" occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.
Pursuant to this statute, a court can adjudicate a child dependent on the basis of neglect when the State presents evidence indicating that the child is permitted to live in an environment which causes the child's physical, mental, or emotional health to be significantly impaired. Also, recognizing the validity of prospective neglect claims, our courts have not required the State to wait for a child to be neglected before instituting dependency proceedings, but instead, have granted the trial courts the authority to adjudicate a child to be dependent based upon a finding of substantial risk that the child is in danger of imminent neglect. See Richmond v. Department of Health & Rehabilitative Servs., 658 So.2d 176, 177 (Fla. 5th DCA 1995).
Section 39.01(30) explains that "harm" is caused to a child when a parent inflicts physical, mental, or emotional injury upon the child, including when the parent engages in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child:
39.01 Definitions.When used in this chapter, unless the context otherwise requires:
* * *
(30) "Harm" to a child's health or welfare can occur when any person:
(a) Inflicts or allows to be inflicted upon the child physical, mental, or emotional injury ...
* * *
(i) Engages in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child.
§ 39.01(30), Fla. Stat. (1999). In construing this statute, the Fourth District has determined that the statutory definition of harm includes domestic violence committed in the presence of a child:
We conclude that this portion of the definition would include harm caused by *618 incidents of domestic violence, but it is limited to instances where the child sees or is aware of the violence occurring.
See D.H. 769 So.2d at 426 (citing to State v. Werner, 609 So.2d 585, 586 (Fla.1992)(explaining that presence denotes something more than being in the immediate vicinity. It is the viewing or the awareness of an act that gives legal significance to the term)).[2] Applying this law to the instant facts, the father's claims of error must fail. The evidence of the father's abuse of the mother as witnessed by the child, together with the evidence indicating that the parents will more likely than not resume their relationship in the future and thus resume their cycle of domestic violence in the presence of the child, establishes prospective neglect sufficient to support a finding of dependency, even in the absence of medical or other expert testimony.
The father also contends that the court's finding of dependency must be reversed because the court failed to make a finding that "no reasonable prospect exists that the parent can improve his or her behavior." He contends that such a finding is necessary in order to justify an adjudication of dependency based upon a finding of prospective neglect. However, the authority cited by the father to support his claim, Palmer v. Department of Health & Rehabilitative Servs., 547 So.2d 981 (Fla. 5th DCA 1989), evidences his misapprehension of the law in this area. In that regard, the Palmer case involved a claim of termination of parental rights, a permanent adjudication severing the relationship between a child and her parent. In contrast, the instant case involves a determination of dependency, a temporary adjudication with regard to that same relationship. Different standards of proof apply in termination and dependency cases due to the fact that the nature and the purpose of the proceedings are different. For example, one purpose of establishing a performance agreement which typically follows a finding of dependency is to seek to improve the parent's behavior so as to accomplish reunification at a later date, thereby avoiding termination proceedings. In any event, we reject the father's contention that the trial court was required to make a finding that no reasonable prospect exists that the father could improve his behavior in order to adjudicate E.R. dependent.
Having concluded that the claims of error raised by the father possess no merit, we affirm the trial court's dependency order.
AFFIRMED.
W. SHARP, and PETERSON, JJ., concur.
NOTES
[1] The child's mother has not challenged the adjudication of dependency.
[2] The detrimental effect of domestic violence on children who witness such violence is well documented. The First Report of the Governor's Task Force on Domestic Violence, issued in 1994, found that observing domestic violence has profound negative impacts on children, especially in light of the fact that witnessing violence in the home has a more severe impact than witnessing violence outside of the home. Similarly, the American Bar Association's Report entitled "The Impact of Domestic Violence on Children," also issued in 1994, found that children do not have to suffer abuse personally to be adversely affected, but instead suffer from "merely observing or hearing the domestic terrorism of brutality against a parent at home." See John F. Harkness, Jr., "Florida, ABA Take Lead on Domestic Violence," 68 Fla. B.J. 16 (Oct. 1994).