837 So.2d 1108 (2003)
J.B.P.F., the Mother, Appellant,
v.
DEPARTMENT OF CHILDREN & FAMILIES, Appellee.
No. 4D01-5028.
District Court of Appeal of Florida, Fourth District.
February 19, 2003.
Denise E. Kistner of Law Offices of Denise E. Kistner, P.A., Fort Lauderdale, for appellant.
Charlie Crist, Attorney General, Tallahassee, and Laurel R. Wiley, Assistant Attorney General, Fort Lauderdale, for appellee.
POLEN, C.J.
J.B.P.F. ("Mother") timely appeals an order adjudicating her minor child A.P. dependent. While it appears dependency may in fact be an appropriate remedy, since we do not find dispositive the lower court's reasons for adjudicating A.P. dependent, we remand for further proceedings as discussed below.
The Department of Children and Family Services ("DCF") filed its first petition seeking to adjudicate A.P. dependent in July of 2000. A.P. was thirteen at the time. Her younger brother, J.P., age eleven, had previously been adjudicated dependent in January of 1996. J.P. suffered from severe psychological and behavioral problems and had a past history of uncontrollable explosive aggressive behavior. Between 1996 and 2000 J.P. was in and out of residential treatment programs and was Baker acted[1] on a number of occasions. However, by the spring of 2000, J.P.'s *1109 counselor believed he was progressing and arranged an unsupervised visitation at his Mother's home for June of that year. The visit did not go well. J.P. had a violent outbreak; his Mother and her live-in boyfriend, Mr. Festa, physically restrained him with handcuffs for 10-15 minutes and poured the contents of an entire bottle of hot sauce down his mouth. J.P.'s therapeutic foster parent noticed bruising on his face when he was returned to her care.
As alluded to above, this instance of abuse on A.P.'s brother J.P. brought about the July 2000 petition seeking to declare A.P. dependent.[2] The petition stated A.P. was at substantial risk of imminent abuse or neglect, as evidenced by the physical abuse inflicted on J.P.[3] The petition was subsequently amended, adding allegations that A.P. had resided primarily in the home of a non-relative on and off for the past four years without any financial support from the Mother, and that the Mother worked as a prostitute. The matter proceeded to an adjudicatory hearing on November 8, 2001.
A number of expert witnesses testified concerning J.P.'s severe psychological problems. The consensus seemed to be J.P. had needed to be restrained in the past, but that the use of handcuffs and hot sauce had been excessive. The primary fact witness was family friend and neighbor Windy Fountain. Mrs. Fountain testified she had been helping the Mother care for A.P. since the end of 1995, and that over time the level of assistance had progressed to where now A.P. was residing with Mrs. Fountain and her family. Mrs. Fountain first met the Mother's boyfriend, Mr. Festa, in April of 1999 when he moved in with the Mother. Mrs. Fountain testified their cohabitation was filled with fighting, arguing, yelling matches, and throwing things around. Mrs. Fountain specifically recounted four specific instances concerning the Mother and Mr. Festa, including one where she overheard Mr. Festa threaten to kill her,[4] and one where she observed Festa walking around their home with a knife. Before and after these instances, the Mother engaged in a pattern of moving in and out of the apartment she shared with Festa. Initially A.P. followed her Mother in and out of Festa's home, but stayed on with the Fountains permanently since September of 1999.
At the conclusion of the adjudicatory hearing, the court orally pronounced, "I can't tell you how concerned I am about what has happened to [J.P.]. And as a result of what has happened to [J.P.], what is occurring with [A.P.]. And I don't believe that you can really separate the two." The court subsequently entered an order finding A.P. was at substantial risk of imminent abuse and neglect and adjudicated A.P. dependent. See § 39.01(14), Fla. Stat. (2001). The Mother fought the adjudication proceedings below, and continues to do so on appeal.
Upon review of the record, it appears the lower court's order adjudicating A.P. dependent relied in large part upon the June 2000 instance of abuse upon J.P. We find this was error. Although the lower court did not find A.P. had been personally abused in the past, it did find she was "at substantial risk of imminent abuse and neglect" based upon the abuse inflicted upon J.P. and therefore was dependent. *1110 See § 39.01(14). Addressing this specific ground for dependency, this court has held:
Based upon this provision, the supreme court has held that a trial court can find children who have not been abused to be dependent because of the abuse inflicted upon their siblings. The evidence, however, must support a nexus between the act of abuse and any prospective abuse to another sibling. O.S. v. Dep't of Children & Families, 821 So.2d 1145, 1148 (Fla. 4th DCA 2002) (citations omitted).
Here, the evidence fails to establish a sufficient "nexus" between the instance of abuse upon J.P. and the risk of prospective abuse upon A.P. Although the June 2000 restraint/abuse of J.P. by the Mother and Mr. Festa was excessive, and perhaps malicious, there appears to be no question it was, at least initially, directly related to J.P.'s behavioral condition. No evidence was presented that A.P. suffered from any psychological or behavioral problems at all; to the contrary, testimony established she was a relatively happy and well-adjusted child. Moreover, it appears the Mother certainly appreciated the uniqueness of J.P.'s situation, as evidenced by the fact that she had initially contacted DCF in 1995 for assistance in dealing with him, and on a past occasion she had contacted DCF in order to protect A.P. from J.P. Aside from the June 2000 incident, no other evidence of any abuse by the Mother upon J.P., or anyone else, was presented. J.P. does not live with the Mother, and as of the date of the adjudicatory hearing the Mother was prohibited from any contact with J.P. We hold the evidence fails to establish a nexus between a single incident of restraint/abuse upon a child with severe behavioral problems, and a finding that A.P., a "normal" well-adjusted child, is at substantial risk of suffering the same or similar abuse. See D.H. v. Dep't of Children and Families, 769 So.2d 424, 428 (Fla. 4th DCA 2000)(evidence failed to establish sufficient nexus between single incident of abuse by father upon his step-daughter and finding his natural daughter was at substantial risk of prospective abuse, finding the testimony did not indicate a probability that the condition causing the father to be abusive would continue or be directed at his natural child); cf. O.S., 821 So.2d at 1148 (substantial nexus existed between specific incident of abuse upon older daughter and prospective abuse of younger daughter where the mother had administered the same form of excessive punishment on both children in the past, and there was high likelihood the younger daughter would receive even more beatings in the future, since the older daughter, who had received the majority of the beatings in the past, was no longer in the home).
However, we do not reverse the adjudication of dependency outright. We are extremely concerned regarding the pattern of behavior between the Mother and Mr. Festa.[5] We note domestic violence that occurs in the presence of the child may serve as the basis that a child has been "harmed," and may serve as grounds for adjudicating that child dependent. See § 39.01(30)(I), Fla. Stat. (2001); D.D. v. Dep't of Children & Families, 773 So.2d 615 (Fla. 5th DCA 2000)(child must see, or be aware of, the violence occurring); D.H., 769 So.2d at 426. Although the lower court mentioned the pattern of domestic violence between the Mother and Mr. Festa below, where its order adjudicating A.P. dependent relies so largely on an invalid ground, the single incident of *1111 abuse upon J.P., we hold reversal and remanding for further proceedings is the appropriate remedy. Thus, we remand with directions for the lower court to determine whether it is satisfied that the record supports adjudicating A.P. dependent, based upon her awareness of domestic violence between her Mother and Mr. Festa. A.P.'s safety and well-being is the penultimate goal, and we commend the lower court for its actions below, which were clearly aimed at furthering such.
REVERSED and REMANDED.
SHAHOOD and GROSS, JJ., concur.
NOTES
[1] See § 394.467, Fla. Stat. (1998).
[2] Criminal charges were also brought against the Mother arising from this episode.
[3] The petition also alleged A.P.'s father was incarcerated and had abandoned her. The father was eventually deported. He is not a party to this appeal.
[4] We find the introduction of this hearsay testimony, the specific contents of Mr. Festa's threat, even if erroneous, was harmless beyond a reasonable doubt. See Goodwin v. State, 751 So.2d 537 (Fla.1999).
[5] Although the record does not clearly state the date on which such occurred, it appears the Mother and Mr. Festa are now married.