864 So.2d 1278 (2004)
T.R., Father of A.R., T.R., and S.R., Children, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D03-977.
District Court of Appeal of Florida, Fifth District.
February 6, 2004.
*1279 Stephen C. Mays, Merritt Island, for Appellant.
Charles D. Peters, Department of Children and Family Services, Orlando, for Appellee.
SHARP, W., J.
T.R. appeals from an order of adjudication, which found his two teenage children dependent as to him. The son was 14 at the time of the hearing and the daughter was 16. Their mother was incarcerated and expected to be released within a year. The three had been living with T.R.'s girlfriend, Jody. Jody and T.R. also had a baby daughter, age 6 months, living with them at the time of the domestic violence incident which forms the basis for the dependency adjudication. We affirm.
The trial court found that an act of domestic violence had taken place in the home at 6:30 a.m. on June 20, 2002. Although the testimony was in conflict, the trial judge chose to believe the parental aunts, that Jody has changed her story between the time she called out to the family for help. Shortly after the domestic violence incident, Jody called both aunts (T.R.'s sisters) and threatened to call the police unless they got T.R. to leave the house before she returned from work. She told them she would have him charged with attempted murder for having backed her into a corner with a steak knife while she was holding their baby in her arms. Although the aunts were reluctant to get involved, they intervened, got their brother to flee the house, and took charge of the teenagers. Both testified Jody had called them numerous times during the day the incident occurred, hysterical and crying.
At the trial, the incident had paled to a minor heated discussion between Jody and T.R., because T.R. had stayed out all night and taken Jody's car without her permission. The steak knife was not used to threaten Jody, but was merely used to stir T.R.'s coffee.
The daughter was sleeping in her bedroom when the incident occurred. The son was sleeping on the porch at the back of the house, which was separated from the kitchen-living room area, where the incident took place, by a glass door. The door was open. Both had somewhat changed their stories more favorably to their father by the time of the trial. Nevertheless, both testified they had been awakened from sleep by hearing Jody and their father shouting and yelling. They knew Jody had the baby with her. The daughter testified she heard Jody say: "Keep the knife away from me ..." The son testified he heard Jody yell, "keep that knife away from me and the baby." He heard Jody crying and both were screaming. He said his father was kind of drunk.
The trial court concluded the Department had proven by a preponderance of the evidence that the act of domestic violence had occurred and that although not in the room at the time it took place, the teenage children were aware of it. We agree with the trial judge that the evidence adduced supported those conclusions.[1]
*1280 T.R. argues that even if the domestic incident occurred, there is no evidence this one incident of domestic violence was sufficient to support the trial judge's conclusion that the teenagers were impaired emotionally or that future risk of impairment was likely. At the time of the trial, Jody and T.R. had separated and were no longer romantically involved. However, there was testimony that after the removal of the teenagers from the home, T.R. criticized his son because the son did not want to live with Jody, or have her supervise his visitation with his father.
This court has held that when children witness incidents of domestic violence, both verbal and physical abuse between parents, that the children are at risk of being "harmed"impaired mentally and emotionallyif they remain in the custody of the abusive parents, within the meaning of section 39.01(30)(i), Florida Statutes (2002).[2]See D.D. v. Department of Children and Families, 773 So.2d 615 (Fla. 5th DCA 2000). See also D.W.G. v. Department of Children and Families, 833 So.2d 238 (Fla. 4th DCA 2002); D.H. v. Department of Children and Families, 769 So.2d 424 (Fla. 4th DCA 2000). It does not matter that the violence is not directed at them so long as they are aware of its taking place, and the violent behavior demonstrates a wanton disregard for the presence of a child. In this case, the baby was directly threatened by the incident since Jody was holding her in her arms while being threatened with a knife. Both teenagers heard the domestic violence taking place from next door rooms, and were aware of it. We think the "presence" factor was satisfied in this case.
However, it is a close case. Should proof of one act of domestic violencehere T.R.'s threatening his girlfriend with a knife while she is holding their baby suffice? In the cases cited above, D.W.G., and D.D., there were multiple incidents of domestic violence witnessed by the children involved. However, there are indications in the record in this case that T.R. had a domestic violence history including two prior battery charges and two petitions for domestic violence injunctions which were dropped. In addition, the domestic violence in this case was accomplished with a deadly weapon. On balance, we choose to affirm the able trial judge in this case.[3] A finding of dependency is not a termination, but an opportunity to restore and hopefully repair a family heading in the wrong direction. See D.D., 773 So.2d at 618.
AFFIRMED.
GRIFFIN and MONACO, JJ., concur.
NOTES
[1] See Vandergriff v. Vandergriff, 456 So.2d 464 (Fla.1984); Boylan v. Boylan, 571 So.2d 580 (Fla. 4th DCA 1990); Wright v. Wright, 431 So.2d 177 (Fla. 5th DCA 1983).
[2] Subsection 39.01(30), Florida Statutes (2002), defines harm and provides:

(30)(i) "Harm" to a child's health or welfare can occur when any person:
(i) Engages in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child.
[3] See R.F. v. Department of Children and Families, 844 So.2d 821 (Fla. 5th DCA 2003)(denial of motion for reunification not abuse of discretion); Artuso v. Dick, 843 So.2d 942 (Fla. 4th DCA 2003)(trial court afforded wide discretion in determining child custody).