SHARP, W., Senior Judge.
Morcroft, guardian ad litem of three minor children, appeals from a final order that dismissed a dependency action against the children’s father, after a trial.[1] In this unusual case, the Department did not file a notice of appeal nor move to join Morcroft as an appellant, and was limited to filing an Answer Brief, in which it acknowledged it could neither argue to uphold the order on appeal nor oppose it.[2] We reverse for further proceedings, as we determine the order was based on misstatements and misapplication of the law.
The facts are not in dispute. In March 2005, the Department sheltered the minor children after the father had engaged in a vicious assault on the mother in her home, and in the presence of the children. He struck her repeatedly on her body and head with an object (apparently a hammer). She suffered a fractured skull and other injuries and was hospitalized for a period of time.
The children were sheltered with the maternal grandmother. The dependency court issued a no-contact order against the father and the paternal grandmother. The father was ultimately charged with multiple criminal offenses: attempted first degree murder with a deadly weapon, aggravated battery with a deadly weapon, three counts of child abuse, and domestic violence.
In April 2005, the mother obtained a permanent injunction for protection from domestic violence against the father from the domestic relations division of the circuit court. The injunction prohibits the father from going near the family home, the mother’s place of employment, and the children’s day care location. It finds that the father willfully violated a prior temporary ex parte injunction based on earlier domestic violence, which the mother had obtained prior to this attack on' her. The father had notice of the temporary injunction, which may have precipitated the March incident of violence against the mother.
The permanent injunction also grants “temporary custody” of the children to the mother and the maternal grandmother, “DCF in charge,” and prohibits the father from having any contact with the children “until further order of the Court.”
On April 26, 2005, the mother was declared non-offending and the children were placed in her custody. An adjudicatory hearing regarding the father was held on July 12, 2005. At this hearing, the mother sought dismissal of the dependency petition against the father because she had obtained a permanent injunction against the father, and thus she argued, a finding *590 of dependency against the father was not necessary. She testified she intended to file for dissolution of marriage from the father, although she had not yet done so. She further testified that since the attack and his subsequent incarceration for violating the temporary injunction, she had had no contact with the father.
At the adjudicatory hearing, the details of the father’s attack on the mother were established, as well as the circumstance that the children were present in the room at the time. Substantial competent evidence was also presented as to the impact of the attack on the children. When a protective investigator arrived at the scene, she found the children huddled in the back of a police cruiser, alone, their clothes covered in the mother’s blood. They were upset and shivering. One talked about being scared and hiding in the closet. Another interjected that “he hit Mommy, Mommy got hurt, Mommy’s bleeding in her head.” The first child described how his father grabbed Mommy by the neck and hit her on the face, neck and body. He was also afraid that Daddy might hurt him.
The mother also testified that after this incident of domestic violence, the children’s behavior changed. One was afraid everywhere they went, stayed close to her and asked a lot of questions about what happened to the father. Another became more aggressive and began to fight. There was no allegation or evidence that the father had ever physically abused the children.
The court declined to find the children dependent as to the father for several reasons. The trial judge announced that the evidence regarding emotional harm to the children in order to establish child abuse was inadequate because the Department had not presented an expert to testify in this regard, and one was required in a case where no physical harm was proven. It also declined to find prospective abuse as to the children because the Department had failed to establish a “cycle” of domestic violence in front of the children. The remaining basis for the trial court’s refusal to find the children dependent as to the father was that the parents are separated and an injunction is in place with a no-contact order. Thus, there is no threat to the children.
A trial court’s final ruling of dependency, vel non, is a mixed question of law and fact, and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record. T.G. v. Dept. Children & Families, 927 So.2d 104 (Fla. 1st DCA 2006).
With regard to the trial court’s statements of the law regarding the requirement of expert testimony for a finding of abuse and neglect, we respectfully disagree. No expert witness is required to bolster evidence regarding the detrimental effect of witnessing domestic violence on children in order to support a finding of dependency. D.D. v. Dept. of Children & Families, 773 So.2d 615, 618 (Fla. 5th DCA 2000).
Further, we think that the evidence was sufficient to have sustained a finding of dependency based on abuse. Chapter 39 defines a “dependent” child as one who is found by the court to have been abandoned, abused or neglected by his or her parents or one who is “at substantial risk of imminent abuse, abandonment or neglect by the parent or parents.” § 39.01 (14)(a)(f), Fla. Stat. (2005). “Abuse” is defined as “any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child’s physical, mental, or emotional health to be *591 significantly impaired.” § 39.01(2), Fla. Stat. “Harm” includes engaging in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child. § 39.01(30)(i), Fla. Stat. This includes domestic violence committed in the presence of a child. See B.C. v. Dept. of Children & Families, 846 So.2d 1273 (Fla. 4th DCA 2003); F.R. v. Dept. of Children & Families, 826 So.2d 449 (Fla. 5th DCA 2002).[3]
It is unnecessary to present evidence of a “cycle” of domestic violence committed in front of the children in every case to sustain a finding of dependency. We have mentioned a pattern of domestic violence or a cycle of domestic violence as warranting a finding of abuse. See W.V. v. Dept. of Children & Families, 840 So.2d 430 (Fla. 5th DCA 2003); D.D.; F.R. However, a single act of domestic violence in front of the children, if it is sufficiently horrific, as here, is adequate. What if, in this case, the father had succeeded in killing the mother? He certainly tried.
In T.R. v. Department of Children and Families, 864 So.2d 1278 (Fla. 5th DCA 2004), a finding of dependency was upheld by this court based on one altercation in which a father threatened his live-in-girlfriend with a steak knife while she was holding their baby. Although not present in the room, his two teenagers were aware of the incident, having heard the shouting and commotion. In affirming, this court explained:
Should proof of one act of domestic violence — here T.R.’s threatening his girlfriend with a knife while she is holding their baby — suffice? In the cases cited above ... there were multiple incidents of domestic violence witnessed by the children involved. However, there are indications in the record in this case that T.R. had a domestic violence history including two prior battery charges and two petitions for domestic violence injunctions which were dropped. In addition, the domestic violence in this case was accomplished with a deadly weapon. On balance, we choose to affirm....
864 So.2d at 1280.
The other basis for the trial court’s order was that there is no present or future threat of harm to the children because the parents are separated and a no-eontact injunction is in place. Further, the father’s counsel argued that the father is in jail and facing a long incarceration for attempted first degree murder and other charges.
We are not reassured by these measures. At the time of the dependency hearing, the father was in jail based on his violation of a temporary injunction for domestic violence. He had not been incarcerated for the attempted first degree murder charge, nor was there any evidence it was actively being prosecuted. The permanent injunction upon which the trial court relied to find no present threat, appears to be “temporary,” regarding the custody of the children. It grants joint custody to the maternal grandmother, as well as the mother, and it contemplates continued involvement of the Department, as it expressly states “DCF in charge.”
If any one of the family law courts in the Ninth Circuit[4] should be in charge of this case, it is the dependency court. Ample *592 grounds exist to base a finding of dependency regarding the father as to these children based on both abuse and prospective abuse. A dependency adjudication against the father would presumably bar him from contact with the children, as does the permanent injunction, but it could also require him to attend domestic violence and anger management programs and address the basic causes of the problems which have brought him to this point in his life and that of his children.[5] Based on this record, we do not know whether the father will be incarcerated for an extended term of imprisonment.
REVERSED and REMANDED.
MONACO, J., concurs.
COBB, W.H., Senior Judge, dissents with opinion.

. Jurisdiction is based on Florida Rule of Appellate Procedure 9.146(b).

. See M.A. v. Dept. of Children & Families, 906 So.2d 1226 (Fla. 1st DCA 2005).

. While in this case the evidence established actual serious physical injury to the mother, such evidence is not essential to establishing domestic violence in a dependency setting. See F.R.

. The Ninth Circuit has a domestic relations division of the circuit court which hears cases involving dissolution of marriage and injunctions for domestic violence.

. See also M.S. v. D.C., 763 So.2d 1051 (Fla. 4th DCA 1999) (reversing order denying mother's petition for termination of father's parental rights where father murdered his girlfriend at home while children were present even though father had been convicted of murder and was serving sixty-year term of imprisonment).