935 So.2d 626 (2006)
T.S., Mother of S.D.F., a Child, Appellant,
v.
FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 1D06-0393.
District Court of Appeal of Florida, First District.
August 10, 2006.
Joseph A. Alldredge, Panama City, for Appellant.
*627 Paul E. Perrin, Panama City, for Appellee.
BROWNING, J.
T.S., the mother of a child, S.D.F., appeals a final order adjudicating the child dependent as to the mother, and maintaining the child in the legal custody and care of a non-relative under the protective supervision of the appellee, the Florida Department of Children & Families (Department). The appellant contends it was inappropriate for the trial court to base the finding of dependency upon "a simple battery" inflicted on the child outside the mother's presence. Concluding that competent substantial evidence supports the ruling, and that the trial court applied the correct law to the facts (as found by the court), we find no abuse of discretion and affirm the adjudication of dependency. See S.M. v. Dep't of Children & Families, 832 So.2d 242, 245 (Fla. 5th DCA 2002).
In a dependency proceeding, the Department must establish its allegations by a preponderance of the evidence. See Fla. R. Juv. P. 8.330(a); M.F. v. Florida Dep't of Children & Families, 770 So.2d 1189, 1192 (Fla.2000). The Supreme Court of Florida has described the standard of review as follows:
A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record. [footnote omitted] Competent substantial evidence is tantamount to legally sufficient evidence.
Id. "Great deference is afforded the finder of fact because it has the first-hand opportunity to see and hear the witnesses testify." A.D. v. Dep't of Children & Families, 837 So.2d 1078, 1080 (Fla. 5th DCA 2003). In the Department's administration of a child protection system, "[t]he health and safety of the children served shall be of paramount concern." § 39.001(1)(b)1., Fla. Stat. (2005). The Supreme Court of Florida has stated that "[t]he purpose of a dependency proceeding is not to punish the offending parent but to protect and care for a child who has been neglected, abandoned, or abused." M.F., 770 So.2d at 1193.
Under this chapter, a "child who is found to be dependent" includes a child who is found by the trial court "[t]o have been abandoned, abused, or neglected by the child's parent or parents or legal custodians" under § 39.01(14)(a), Florida Statutes (2005); or "[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians." § 39.01(14)(f), Fla. Stat. (2005).
"Abuse" means any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. Abuse of a child includes acts or omissions.
§ 39.01(2), Fla. Stat. (2005). Section 39.01(30)(a), Florida Statutes (2005), states in pertinent part:
"Harm" to a child's health or welfare can occur when any person:
(a) Inflicts or allows to be inflicted upon the child physical, mental, or emotional injury. In determining whether harm has occurred, the following factors must be considered in evaluating any physical, mental, or emotional injury to a child: the age of the child; any prior history of injuries to the child; the location of the injury on the body of the child; the multiplicity of the injury; and the type of trauma inflicted.
"As used in this subparagraph, the term "willful" refers to the intent to perform an *628 action, not to the intent to achieve a result or to cause an injury." Id. Furthermore, "`harm' to a child's health or welfare can occur when any person . . . [c]ommits, or allows to be committed, . . . lewd or lascivious acts, as defined in chapter 800, against the child." § 39.01(30)(b), Fla. Stat. (2005). Under Florida law, "lewd or lascivious molestation" occurs when a person "intentionally touches in a lewd or lascivious manner the breasts, . . . or the clothing covering them, of a person less than 16 years of age...." § 800.04(5)(a), Fla. Stat. (2005). "Lewd or lascivious conduct" occurs when a person "[i]ntentionally touches a person under 16 years of age in a lewd or lascivious manner." § 800.04(6)(a)1., Fla. Stat. (2005).
The Department's petition alleged that the appellant had failed to protect the child from repeated, known acts of sexual abuse in the immediate past. "Sexual abuse of a child" can include "[t]he intentional touching of the genitals or intimate parts, including the breasts, . . . or the clothing covering them," subject to exceptions not pertinent to this record. § 39.01(63)(d), Fla. Stat. (2005).
The risk to be prevented in this case is the sexual abuse of the child, who was born on August 4, 1993 and, thus, was 11 years old during the month before the July 15, 2005, petition for delinquency was filed. It was during that "last month" when Mr. Ingersoll, the mother's boyfriend then (who subsequently became her husband) was alleged by the Department to have sexually abused the child at least five times. The following competent substantial evidence supports the adjudication of dependency as to the child's mother, who knew about Ingersoll's alleged offensive touching of the child's breast area but failed to protect the child from Ingersoll and, in fact, subsequently married him.
Ingersoll, the child's stepfather, testified that during his horseplay with the child, his hands would come in contact with her breast area. He had apologized to the child and told her that they would not engage in such tickling activities anymore. Ingersoll admitted having a prior conviction of child molestation (of male children) in Michigan in 1983. Another incident in Virginia involved a child (age 3 or 4) and resulted in Ingersoll's being ejected from the household.
Appellant, the child's mother, testified that her daughter had informed her that Ingersoll touched her while they were play-wrestling and that the child was upset about being touched in a particular way. The child told her mother a couple of times that she (the child) did not want Ingersoll to touch her anymore. The mother acknowledged that other children of hers had been removed from her custody due to sexual abuse by the children's father (not Ingersoll). The mother testified that she had observed Ingersoll and the child engaged in horseplay on multiple occasions at home and in public.
The child, age 12, testified she had become upset because Ingersoll was touching her, sometimes grabbing her in her breast area. At times, she believed his touching her was intentional; she had told other people that it was not accidental. After Ingersoll went to jail, causing her to feel guilty, the child decided his touching her must have been accidental. Without an objection, the child testified she "guessed" she had told Miss Kim that Ingersoll touched her five times within a month.
The evidence supports the trial court's findings and conclusions that Ingersoll repeatedly committed at least a battery, i.e., an actual, willful touching of the child against her will as defined in section 784.03(1)(a), Florida Statutes (2005), and that the touching sometimes involved her *629 breast area, thereby constituting sexual abuse and exposing the child to a substantial risk of imminent abuse. Viewed in a light most favorable to supporting the trial court's ruling, the evidence demonstrated that the mother neglected to protect her child from sexual abuse, as defined under Florida statutory law, and from a known harm. The child's testimony supported conflicting conclusions that the offensive touching was either intentional or accidental. It was the duty of the trier of fact to resolve this conflict in the child's own testimony. See D.J.W. v. Dep't of Children & Family Servs., 764 So.2d 825, 826 (Fla. 2d DCA 2000). In carrying out its duty, the trial court was entitled to reject the child's recantation testimony. Appellant misconstrues the standard of review in implying that the evidence should be re-evaluated, and the adjudicatory proceeding re-litigated, on appeal. See S.M., 832 So.2d at 244.
The final order adjudicating the child dependent as to the mother is AFFIRMED.
ERVIN and BENTON, JJ., concur.