997 So.2d 513 (2008)
In the Interest of S.M., D.M., and J.A., children.
C.M., Appellant,
v.
Department of Children and Family Services and Guardian Ad Litem Program, Appellees.
No. 2D07-4976.
District Court of Appeal of Florida, Second District.
December 31, 2008.
*514 David A. Dee, Tampa, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Christopher Perone, Assistant Attorney General, Tampa, for Appellee Department of Children and Family Services.
Wendie Michelle Cooper, Orlando, for Appellee Guardian ad Litem Program.
ALTENBERND, Judge.
C.M. appeals an order adjudicating all three of her children dependent based upon evidence that the eldest of the three, a young girl, was sexually abused by C.M.'s boyfriend. We reverse the adjudication as it relates to the youngest child, an infant, J.A. The Department of Children and Family Services has conceded that it failed to present competent, substantial evidence that J.A. was abandoned, abused, or neglected, or at substantial risk of imminent abandonment, abuse, or neglect. We affirm the adjudication as to the two older children, however, because there was competent, substantial evidence that these children were abused or neglected.[1] Although the middle child, D.M., was not the target of the sexual abuse within this family, he nevertheless was abused as that term is statutorily defined. Based upon competent, substantial evidence, the trial court properly determined that the mother's willful acts in response to the abuse of D.M.'s sister and D.M.'s knowledge of that abuse were acts that resulted in mental injury likely to cause a significant impairment to his mental health.
A trial court may adjudicate a child dependent if the Department proves by a *515 preponderance of the evidence that the child has been abused or neglected or is at substantial risk of imminent abuse or neglect. See §§ 39.01(14)(a),(f), .507(1)(b), Fla. Stat. (2006). "Abuse" is "any willful act" that results in "any ... mental ... injury or harm that causes or is likely to cause the child's ... emotional health to be significantly impaired." § 39.01(2). Pursuant to subsections 39.01(31)(a) and (j), "harm" occurs when any person "[i]nflicts or allows to be inflicted upon the child physical, mental, or emotional injury" or "[n]egligently fails to protect a child in his or her care from inflicted physical, mental, or sexual injury caused by the acts of another." A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent, substantial evidence in the record. R.F. v. Fla. Dep't of Children & Families, 770 So.2d 1189, 1192 (Fla.2000).
In this case, there is little question that the Department presented competent, substantial evidence supporting the dependency of C.M.'s eldest child. The Department presented evidence that this child was sexually abused by the mother's boyfriend, that the mother was informed of the abuse and even ordered to keep her boyfriend away from her children, but the mother instead continued to reside with her boyfriend and the children. The evidence that the mother willfully continued to reside with her boyfriend despite knowledge of the sexual abuse was sufficient to support the trial court's finding that S.M. was dependent as to the mother. See T.S. v. Fla., Dep't of Children & Families, 935 So.2d 626 (Fla. 1st DCA 2006). We therefore affirm that adjudication.
Under the current state of the law, however, the abuse of one child is not itself sufficient to prove that the parent's other children are dependentthat is, that the other children have been abandoned, abused, or neglected, or are at substantial risk of imminent abandonment, abuse, or neglect. R.F., 770 So.2d at 1194. Rather, the Department must establish the required elements of dependency as to each child individually.
In many cases, the Department seeks to establish that the siblings of an abused child, though they may not have been directly abused, are at substantial risk of imminent abuse or neglect as a result of the parent's behavior. See § 39.01(14)(f); Tolley v. Dep't of Health & Rehabilitative Servs., 667 So.2d 480 (Fla. 5th DCA 1996). The case law in this area generally discusses the need for the Department to establish a "nexus" between the parent's abuse of the one child and the risk that the parent will similarly abuse another child. See M.C. v. Dep't of Children & Family Servs., 940 So.2d 571, 575 (Fla. 2d DCA 2006). This analysis focuses on the parent's behavior and whether that behavior or the circumstances surrounding that behavior permit a reasonable prediction that the parent will visit similar abuse or neglect on the child's siblings in the near future. The risk of prospective abuse may be established, for example, through evidence that the parent has a mental illness or emotional condition that makes it "highly probable" the parent will abuse another child. Id. Again, however, the risk to an abused child's siblings cannot be based solely upon the fact that the one child suffered abuse. R.F., 770 So.2d at 1194.
This "nexus" analysis was the focus of much of the parties' arguments in this case. It is not, however, the only circumstance under which a court can find a child dependent based in large part upon the direct abuse of a sibling. Without regard to the probability of future harm, there are times when a child's present knowledge of *516 past or ongoing abuse to his or her sibling, coupled with the response of the parents to that knowledge, can result in present mental injury qualifying the child for protection under dependency.
The distinction between these two scenarios is demonstrated in J.B.P.F. v. Department of Children & Families, 837 So.2d 1108 (Fla. 4th DCA 2003). J.B.P.F. was the mother of two children. One child, an 11-year-old boy, had severe psychological and behavioral problems which led the mother to seek the Department's assistance to have him placed in a therapeutic foster home. Id. at 1108-09. The other child was a 13-year-old girl who lived with the mother on and off and who appeared well-adjusted and happy. In spring 2000, the 11-year-old was permitted an unsupervised visit with the mother, which ultimately led to an incident in which the mother and her boyfriend restrained the boy with handcuffs for fifteen to twenty minutes and poured an entire bottle of hot sauce down his throat. The boy was returned to his therapeutic foster home after the visit, but the incident led the Department to seek an adjudication of dependency for the 13-year-old girl. Id.
The Fourth District reversed the trial court's order finding the 13-year-old dependent to the extent it was based in large part on the single incident involving the 11-year-old. The appellate court concluded that this one incident of abuse of the 11-year-old did not sufficiently prove the 13-year-old was at substantial risk of prospective abuse. Nevertheless, the Fourth District refused to reverse the dependency outright and instead remanded the case for further consideration. Id. at 1110-11. The Department had presented considerable evidence that the mother was in an abusive relationship with her boyfriend which resulted in a pattern of domestic violence in the household. The court noted that a finding of dependency might still be appropriate to the extent the 13-year-old was aware of this family violence or affected by it. Id.; see also R.M. v. Dep't of Children & Families, 886 So.2d 329 (Fla. 5th DCA 2004) (ongoing domestic violence directed by father against mother and daughter was sufficient to support dependency of son). That is, although the 13-year-old child was not directly physically abused, her exposure to the abuse within the family was itself a form of abuse potentially supporting an adjudication of dependency.
A further example of this is described in a termination of parental rights case, Department of Children & Families v. B.B., 824 So.2d 1000 (Fla. 5th DCA 2002), which involved a father who believed in polygamy as a religious practice and had "married" his step-daughter and daughter. The trial court terminated the father's parental rights to these two girls but specifically refused to terminate the father's parental rights to the boys in the family, effectively finding no "nexus" between the sexual abuse of the daughters and a risk to the boys in the family. Id. at 1006.
The Fifth District reversed and remanded as to the denial of the petition related to the boys. The Fifth District admitted "there is practically zero likelihood that B.B.'s sexual abuse of [his daughters] is predictive of his sexual abuse of his sons" because "[m]anifestly, B.B.'s motivations and interests lie elsewhere." Id. at 1008. Nevertheless, the court concluded, "there is no reason why the abuse has to be symmetrical." Id. The court explained,
B.B. may not intend to abuse his sons sexually, but he has apparently inculcated in his sons the same religious practices that endorse crimes such as polygamy and the sexual battery of female children. The boys were living in a household where the father is sleeping *517 with one twelve-year-old sister and trying to seduce another. These same religious views also encouraged the[] children not only to lie but to commit perjury in order to protect the adults from prosecution for their crimes.
Id. This evidence was sufficient to support a termination of the father's rights to the boys as well as the girls. See also Paquin v. Dep't of Health & Rehabilitative Servs., 561 So.2d 1286 (Fla. 5th DCA 1990).
The facts in this case relating to D.M. are not nearly as egregious as the facts in B.B., yet there are similarities. At the adjudicatory hearing, the Department presented the testimony of S.M. and D.M., as well as other witnesses. D.M. testified that his sister told him about the abuse, and he reported it to his mother. C.M. admitted that she was made aware of the abuse, but she did not believe it had occurred. After the allegations of abuse came to light, the Department was involved with the family in Hernando County and C.M. was ordered not to allow S.M. and D.M. to have contact with her boyfriend. Despite the order, both children essentially testified that the boyfriend was living consistently with the family thereafter and acting as a father figure to the children. Thus, D.M. was a direct witness to the fact that his mother was aware of the abuse but did nothing to protect S.M. D.M.'s testimony at the adjudicatory hearing was defensive and at times elusive. He appeared to blame S.M. for the break-up of the family and his placement into foster care. In deciding to adjudicate D.M. dependent, the court specifically found from the testimony presented that "[D.M.] has been taught, either directly or indirectly, to ostracize [S.M.] for coming forward and currently maintaining these allegations." The court further explained that the dependency of D.M. was "based upon the trauma he exhibited when he testified today about the physical abuse and the fact that he has basically turned against his sister and that, in and of itself, does not provide for a healthy and safe environment for him, either. [D.M.] needs counseling ... so he will no longer bear the burden of having to choose sides in this family."
Given the deference that is afforded to trial judges in dependency cases when their findings are supported by competent, substantial evidence, we conclude that the trial court could determine that the mother had not only abused and neglected S.M. by failing to protect her from continued contact with her boyfriend but also that the mother had abused D.M. We therefore affirm the adjudication of dependency as to both S.M. and D.M.[2]
A different situation is presented with the infant child, J.A. As noted above, the Department has conceded that there was insufficient evidence to support the dependency of this child. This child is the child of both C.M. and the boyfriend.[3] *518 The Department presented no evidence to suggest that the facts surrounding the abuse of S.M. established that her infant half-sister was also at risk of imminent abuse or neglect, nor to show that the abuse of S.M. in some way harmed this infant. We therefore reverse this portion of the dependency order. See, e.g., R.F., 770 So.2d at 1194; see also M.C. v. Dep't of Children & Family Servs., 936 So.2d 764 (Fla. 2d DCA 2006).
The portion of the order adjudicating the children S.M. and D.M. dependent is affirmed. We reverse that portion of the order holding that the youngest child, J.A., is dependent. We remand for further proceedings consistent with this opinion.
CASANUEVA and KELLY, JJ., Concur.
NOTES
[1] The father of the two older children, S.M. and D.M., was notified of the dependency proceedings but has never appeared in the case and apparently has no contact with the children.
[2] This opinion has intentionally focused on the "abuse" of D.M. and not on his "neglect." In part this emphasis is based on the fact that the trial court is permitted to enter a dependency order for any one of the conditions of abuse, neglect, or abandonment. Abuse is the simplest test applicable to this case. We have not overlooked that section 39.01(43) defines "neglect" to occur "when ... a child is permitted to live in an environment . . . [that] causes [his] ... mental[] or emotional health to be significantly impaired or to be in danger of being significantly impaired." It is likely that dependency would be supported in this case under that theory as well.
[3] Indeed, the boyfriend and father of J.A. filed a separate appeal of this order to the extent it held J.A. was dependent as to him, and the Department conceded that the adjudication was not supported in that case. We have previously reversed that portion of the order related to J.A. and the boyfriend. B.A. v. Dep't of Children & Family Servs., 984 So.2d 618 (Fla. 2d DCA 2008).