969 So.2d 496 (2007)
A.W., Mother, In the Interest of B.W., a minor child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 1D07-1724.
District Court of Appeal of Florida, First District.
November 20, 2007.
*497 Shalene Grover, Altha, for Appellant.
George J. Little, Marianna, for Appellee, Department of Children & Families; Hillary S. Kambour, Miami, for Appellee Guardian ad Litem Program.
BROWNING, C.J.
A.W. (Appellant) appeals a final order terminating her parental rights to B.W., her five-year-old daughter, in which the trial court found clear and convincing evidence that satisfied the requirements for termination under section 39.806(1), Florida Statutes (2006). We have jurisdiction to review this ruling pursuant to section 39.815, Florida Statutes (2006). We affirm the termination order in all respects, but we write to explain that Appellant's purported substantial compliance with her case plan was merely technical, at most, and in no way demonstrated her ability to comprehend and implement the basic parenting skills and practices necessary to assure her child's health, safety, and well-being. See § 39.01(71), Fla. Stat. (2006) *498 (defining "substantial compliance" to mean "that the circumstances which caused the creation of the case plan have been significantly remedied to the extent that the well-being and safety of the child will not be endangered upon the child's remaining with or being returned to the child's parent").
Appellant is developmentally disabled. Her personal history is unfortunate. As a child, she was adjudicated dependent and remained in the custody of her mother, D.W. Before Appellant turned 18, she was sexually abused, resulting in the conception of the child, B.W. The child's father, who was convicted of the sexual offense and was incarcerated accordingly, is not a party in this appeal. The child was adjudicated dependent as to Appellant in December 2003 and as to the child's father in August 2004. See § 39.01(14), Fla. Stat. (2006) (defining "child who is found to be dependent").
The order adjudicating dependency states that the home in which Appellant and the child resided posed a serious health and safety hazard, that the child had sustained physical injuries consistent with abuse, and that Appellant's low I.Q. and mild mental retardation rendered her "incapable of learning the basic parenting skills necessary to parent children." The child has been in state custody and care since January 2003. Following the adjudication of B.W.'s dependency, Appellant received a detailed case plan that required her, inter alia, to maintain a safe, clean, sanitary, and stable home; to demonstrate a commitment to the child by regularly providing financial support and other items necessary to support the child; to attend all parenting classes and cooperate with the counselor on issues of parenting, appropriate child supervision, and safe home conditions; and to use this information during her visitations with the child by applying and demonstrating proper parenting skills. See generally § 39.6011-39.6013 & 39.603, Fla. Stat. (2006) (setting out procedures for case plan development, tasks, services, amendments, and court approval).
To assist her in fulfilling the case plan tasks, the appropriate referrals were made by appellee Florida Department of Children and Family Services (Department) and services were provided. Although Appellant attended the programs to which she was referred, the Department determined that Appellant had failed to eliminate the filthy and hazardous conditions in her home, and that she had failed to demonstrate sufficient parenting skills to protect B.W. from serious harm.
Pursuant to section 39.802, Florida Statutes (2006), the Department initiated proceedings to terminate Appellant's parental rights based on her failure to complete the case plan and the continuing risk of serious harm to B.W. irrespective of the provision of services to Appellant. See also § 39.8055(1)(a), Fla. Stat. (2006) (allowing 12 months for parents of a dependent child to complete their case plan sufficiently to have their child returned to parental custody and care, and mandating initiation of termination proceedings absent timely compliance by parents) & 39.806(1)(e)1., Fla. Stat. (2006), infra. As grounds for terminating Appellant's parental rights, the Department cited sections 39.806(1)(b), (c), or (e), Florida Statutes (2006). Specifically, the Department alleged that Appellant had abandoned and neglected the child, as the terms "abandoned" and "neglect," respectively, are defined in section 39.01(1) & (43), Florida Statutes (2006). In its termination petition, the Department expressly cited the following statutory language or presented allegations substantially related to these specific provisions:

*499 (1) Grounds for the termination of parental rights may be established under any of the following circumstances:
. . . .
(b) Abandonment as defined in s. 39.01(1). . . .
(c) When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. . . .
. . . .
(e) When a child has been adjudicated dependent, a case plan has been filed with the court, and:
1. The child continues to be abused, neglected, or abandoned by the parents. In this case, the failure of the parents to substantially comply for a period of 12 months after an adjudication of the child as a dependent child or the child's placement into shelter care, whichever came first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due either to the lack of financial resources of the parents or to the failure of the department to make reasonable efforts to reunify the parent and child. The 12-month period begins to run only after the child's placement into shelter care or the entry of a disposition order placing the custody of the child with the department or a person other than the parent and the approval by the court of a case plan with a goal of reunification with the parent, whichever came first; . . .
. . . .
(3) When a petition for termination of parental rights is filed under subsection (1), a separate petition for dependency need not be filed and the department need not offer the parents a case plan with a goal of reunification, but may instead file with the court a case plan with a goal of termination of parental rights to allow continuation of services until the termination is granted or until further orders of the court are issued.
§ 39.806(1)(b), (c), (e)1. & (3), Fla. Stat. (2006). As defined in pertinent part in section 39.01(1), Florida Statutes (2006):
"Abandoned" means a situation in which the parent or legal custodian of a child[,] . . . while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. If the efforts of the parent . . . are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.
According to the pertinent language in section 39.01(43), Florida Statutes (2006):
"Neglect" occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired. The foregoing circumstances shall not be considered neglect if caused primarily by financial inability unless actual services for relief have been offered to and rejected by such person. . . . Neglect of a child includes acts or omissions.
To support its termination petition, the Department alleged 1) that Appellant had engaged in conduct toward B.W. demonstrating *500 that Appellant's continuing involvement in the parent-child relationship and in the child's life threatened the child's life, safety, emotional and developmental well-being, or physical, mental, or emotional health irrespective of the provision of services; 2) that although Appellant technically had substantially complied with the case plan, she remained unable to demonstrate her ability to parent the child in an appropriate manner; and 3) that Appellant had failed either to provide emotional or monetary support for the child, or in any way to evince a settled purpose to assume parental responsibility for her child. The Department asserted that such conduct on Appellant's part had continued, despite the offer of services, and that the result was that B.W. had remained out of Appellant's custody and care for more than twelve months.
Tracking all the relevant factors set forth in section 39.810(1)-(11), Florida Statutes (2006), the Department alleged that it is in the child's manifest best interests that parental rights be terminated. No suitable permanent custody arrangements existed with other family members who might adopt the child. Both parents had failed to demonstrate the disposition to provide B.W. with food, clothing, medical care, and other significant needs of the child. Neither parent had paid child support during the pendency of the proceedings, nor had they maintained suitable housing or a stable income. The Department alleged that the child would continue to be at risk of harm if she were returned to the custody of the parents, given the parental history of abuse and neglect and the failure to comply substantially with the case plan in any meaningful, constructive manner.
As to the statutory factors relevant in determining what is in the child's manifest best interests, the record demonstrates that B.W.'s mental and physical development are age-appropriate. Little bonding existed between Appellant and the child, and any bonding that had existed was significantly reduced due to the child's removal from parental custody. Although Appellant visited B.W. regularly, the child had been in the Department's custody longer than in parental custody. The child, then four years old, was deemed highly unlikely to remain in foster care on a long-term basis upon termination of parental rights due to any emotional or behavioral problems or special needs. The child had adjusted well to the current home, where she had lived since May 2003. The child had demonstrated the ability to bond with a parental substitute, as shown by her positive relationship with her current care-givers. The child was too young to be able to express her individual preference. A guardian ad litem (GAL) was appointed to the case pursuant to section 39.822, Florida Statutes (2006).
Given the very serious consequences of the termination of parental rights, the quantum of proof required to support the trial court's ruling is "clear and convincing evidence." § 39.809(1), Fla. Stat. (2006). The Florida Supreme Court has characterized such evidence as follows:
This intermediate level of proof entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy.
Inquiry Concerning Davey, 645 So.2d 398, 404 (Fla.1994); In re Adoption of E.A.W., 658 So.2d 961, 967 (Fla.1995). "Our standard of review is highly deferential. A finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless *501 clearly erroneous or lacking in evidentiary support." N.L. v. Dep't of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003). Following a full adjudicatory hearing under section 39.809, Florida Statutes (2006), where Appellant was represented by an attorney, the trial court found clear and convincing evidence that B.W. had been abandoned, abused, or neglected by Appellant; that no parent or legal custodian was available and capable of providing adequate care; that the child was at substantial risk of imminent abuse, abandonment, or neglect by Appellant if termination did not occur; and that the termination of parental rights was in the child's manifest best interests. The child was re-adjudicated dependent, Appellant's parental rights were terminated, and the child was placed in the Department's permanent care and custody for subsequent adoption.
In a separate disposition order pursuant to section 39.811, Florida Statutes (2006), the trial court determined that due to Appellant's own psychological and cognitive limitations, she is simply unable to parent B.W. safely and appropriately. The court found that it would not be in the child's manifest best interests to allow any post-termination visitation between Appellant and B.W. The court allowed Appellant to write the child every month for the first year post-termination, and once every six months thereafter. The foster parents were directed to screen incoming letters from Appellant to the child and were instructed to send a photo of the child to Appellant every six months. No telephone calls will be permitted between Appellant and the child. The Department and the GAL were authorized to seek modification of this visitation plan if the child were to demonstrate any significant signs of separation anxiety.
Appellant appeals the adjudication and disposition rulings on three grounds. First, Appellant contends that the trial court erred in concluding that no reasonable basis exists to believe that any further services could remedy her inadequate parenting skills and the other deficient circumstances that threatened the child's health, safety, and well-being. Second, Appellant argues that termination of her parental rights is not the least restrictive means available to protect her child from harm. Third, Appellant asserts that it was error for the court to terminate her visitation with the child. We address Appellant's arguments separately.

I. Futility of Any Further Services to Remedy Unacceptable Conditions
Clear and convincing expert and lay evidence in the record supports the trial court's findings that the Department offered the requisite referrals, services, and information, yet the conditions in the home where Appellant and the child resided continued to pose a serious health and safety hazard to a mobile child. Home intervention services tried to correct or mitigate the home maintenance problems but were met with strong resistance from Appellant's mother; these services were discontinued for the safety of the service provider. Despite the Department's repeated efforts to assist Appellant in identifying and remedying these serious deficiencies in the home, Appellant is simply unable to address and eliminate the wretched conditions in the home, other than on a temporary, short-term basis.
The record supports the finding that the physical injuries to the child (a bite mark on her arm and bruising about the face and head), which were alleged to have occurred in January 2003, are consistent with physical abuse. Appellant has not provided financially for herself and B.W. Appellant lacks stability in terms of education, *502 skills, age, and personal lifestyle conduct, thereby posing a substantial risk of imminent neglect of the child. Significantly, clear and convincing evidence in the record demonstrated that even after the Department provided a full panoply of appropriate services (including counseling and skills training opportunities), over an extended period time, Appellant remained incapable of putting this instruction into practice.
For example, one of the Department's care managers, Ms. Yon, testified that she was aware of the tasks set forth in Appellant's case plan. Yon testified that it is normal and reasonable for such tasks to mean that the participant must demonstrate the ability to put the instruction into practice. Appellant was unable to implement the tasks that were the subject of her instruction under the case plan, including effective parenting skills and safe home maintenance. Yon testified that the Department had done everything feasible to facilitate a reunification of Appellant and her child. Further, Ms. Reister, who was Appellant's mental-health counselor at the Life Management Center beginning in November 2002, testified that the goals of parenting classes include developing appropriate, effective parenting skills and learning effective anger management. She testified that although Appellant actively participated in the class, Appellant made minimal progress toward her treatment goals.
Ms. Miller, the GAL since late April 2005, expressed concerns for B.W.'s safety if the child were returned to the filthy, cluttered home. Miller noted a lengthy family history of abuse and neglect. The GAL found no extensive bonding between Appellant and B.W. The GAL did not think the child would remain in foster care for long. She recommended that the child be placed for adoption and not be returned to Appellant.
Dr. Koehnemann, a licensed psychologist who evaluated Appellant's cognitive abilities, personality, and parenting skills, testified that Appellant is in the borderline range of intellectual functioning and has "some significant deficit" in parenting abilities, including severe problems with anger management and bonding/attachment. The evaluation disclosed that Appellant is unable to apply good insight to the ordinary problems confronting the parent of a young child. Appellant felt overwhelmed trying to keep up with and manage B.W., who was one year old at the time of the evaluation. Appellant did not understand the child's developmental level and needs, and her parenting skills were "very poor." Appellant exhibited difficulty interpreting and dealing with specific child behaviors. She did not understand that the sub-standard conditions in the home pose a significant health and safety problem. Whether Appellant could change depended on her ability to master the necessary parenting skills and to develop an emotional, maternal attachment to the child. This psychologist opined that at the time of the evaluation, B.W. was at risk in Appellant's household and care due to Appellant's anger management issues and low frustration tolerance.
The problem goes beyond the question of whether further services should be provided by the Department to Appellant. Dr. Koehnemann opined that it is possible Appellant might never be able to learn what she needs to know to parent B.W. safely and effectively. Given Appellant's cognitive status, much more time would be needed to find someone whom Appellant could understand and to determine whether Appellant is capable of learning better parenting skills.
*503 Dr. Oseroff, another psychologist who performed an evaluation of Appellant and the child, an in-home assessment, and a bonding assessment in August-September 2006, characterized Appellant as mildly mentally retarded. This witness testified that although Appellant was able technically to complete the counseling program, Appellant found it difficult to know and understand what the training was intended to impart. This psychologist opined that although Appellant is a wonderful person and a gentle spirit, the essential elements for creating a safe environment for the child are absent. Appellant's "intellectual deficit" impaired her ability to prioritize daily tasks and concerns essential to safe, effective parenting. She had difficulty recognizing if, and when, she needed outside assistance. Dr. Oseroff testified she did not know of any further services that could rectify these problems on a long-term basis in Appellant's case. See R.K. v. Dep't of Children & Families, 898 So.2d 998, 1000 (Fla. 5th DCA 2005) (noting that conclusion that the Department's further provision of services would be futile "generally requires proof that the parent suffers from a condition that makes probable the prospect of future abuse or neglect of a child and that the condition was one which was likely to continue"); L.B. v. Dep't of Children & Families, 835 So.2d 1189, 1195 (Fla. 1st DCA 2002) ("If the parent is so afflicted that no reasonable basis exists for improvement, then the court may find prospective neglect or abuse.").
Noting the child's precociousness and strikingly higher intellectual level of functioning, Dr. Oseroff testified there was a tremendous risk that if B.W. lived with her mother and grandmother, the child would grow up to be the primary care-giver for everyone else in the home. The witness testified that the adults in the home were unable to do what the Department required them to do, to the detriment of the child's best interests. This psychologist opined that B.W. very likely would not reach her full potential if she were to remain in Appellant's home and care. The child had established a strong bond with her foster family, whereas her interaction with Appellant was more like a friendship between equals than a parent-child relationship. Dr. Oseroff opined it would be in the child's best interests to remain with her foster parents and to be adopted.
The expert testimony supports the trial court's conclusion that Appellant's low I.Q. and mild mental retardation render her unable to learn the basic parenting skills necessary to rear her child, despite Appellant's intermittent, incomplete efforts to do so. It is not unreasonable to conclude that Appellant remains basically dependent herself. Therefore, although she is a loving parent who technically performed all the superficial tasks set out in the case plan, Appellant failed to demonstrate her ability to comprehend what the case plan requires in terms of implementing the basic skills necessary to be an effective parent. In other words, the record demonstrated that Appellant could not achieve a level of comprehension and behavior necessary to ensure B.W.'s health, safety, and well-being irrespective of the Department's provision of more services. Appellant's acts and omissions simply did not square with the Florida Legislature's definition of "substantial compliance." See § 39.01(71), Fla. Stat. (2006).
Appellant misplaces her reliance on M.H. v. Department of Children & Families, 866 So.2d 220 (Fla. 1st DCA 2004) (on clarification), in which we explained the three sequential evidentiary requirements for terminating parental rights under section 39.806(1)(c), Florida Statutes (2001). Appellant suggests that the trial court ignored evidence that she had "completed" her case plan tasks and continued taking *504 classes and receiving counseling. In M.H., we described the appropriate evidentiary analysis as follows. "First, the trial court must find the child's life, safety, or health would be threatened by continued interaction with the parent, regardless of the provision of services." Id. at 222. "Second, if the court finds the child[ ] would be threatened with harm, despite the provision of services, [the Department] must then prove there is no reasonable basis to believe the parent will improve." Id. at 222-23; see L.B., 835 So.2d at 1195. "Finally, [the Department] must show termination is the least restrictive means of protecting the child from serious harm." M.H., 866 So.2d at 223; see L.B., 835 So.2d at 1195. In M.H., none of these requirements were met. See 866 So.2d at 223. In contrast, in Appellant's case, the Department presented clear and convincing evidence, which the trial court accepted, satisfying all three sequential requirements of the statute.

II. Termination is the Least Restrictive Means Available to Protect the Child
"Natural parents have a fundamental liberty interest in the care, custody, and management of their children." Interest of C.W.W., 788 So.2d 1020, 1023 (Fla. 2d DCA 2001) (citing Santosky v. Kramer, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Given this fact, the Department has the burden to prove the allegations supporting termination by clear and convincing evidence, and must demonstrate that termination of those rights is the least restrictive means of protecting the child from serious harm. See § 39.809(1), Fla. Stat. (2006); Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991). "Least restrictive means" analysis embodies due-process concerns. Before depriving someone of a fundamental right, such as the right to parent, the State must demonstrate a compelling interest and further such an interest through the least intrusive and restrictive means. See N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 625 n. 16 (Fla.2003); In re T.W., 551 So.2d 1186, 1193 (Fla. 1989). "This means that [the Department] ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child." Padgett, 577 So.2d at 571.
B.W. was adjudicated dependent in December 2003; the adjudicatory hearing on the Department's petition to terminate was held in January 2007. Appellant's failure to substantially comply with the case plan in a meaningful manner, after being afforded far more time than the statutory timetable contemplates, constituted evidence of continuing abuse, neglect, or abandonment. See § 39.806(1)(e)1., Fla. Stat. (2006); J.R. v. Dep't of Children & Family Servs., 754 So.2d 714, 716-17 (Fla. 4th DCA 1998). Because the Department made reasonable, good-faith efforts to rehabilitate Appellant for reunification with B.W. by providing more than three years of services, which ultimately proved futile, the trial court correctly determined that the termination of Appellant's parental rights is the least restrictive means of protecting the child from serious harm and neglect. The Department notes that the child's right to a permanent, stable, and safe home must trump Appellant's right to have more time to understand and implement the essential parenting skills, especially where the expert evidence clearly demonstrated that the provision of yet more counseling and services to Appellant would be futile.
Further, achieving a safe and permanent home expeditiously for children is a primary purpose of Chapter 39. See *505 §§ 39.001(1)(h), 39.013(5), 39.402(14)(e) & 39.621(1), Fla. Stat. (2006). "[A]s between the parent and the child the ultimate welfare of the child itself must be controlling." State ex rel. Sparks v. Reeves, 97 So.2d 18, 20 (Fla.1957); Padgett, 577 So.2d at 570. "At all stages of the proceedings, courts are compelled to expedite proceedings to prevent children from languishing in the foster care system." C.M. v. Dep't of Children & Family Servs., 854 So.2d 777, 779 (Fla. 4th DCA 2003); B.Y. v. Dep't of Children & Families, 887 So.2d 1253, 1256 (Fla.2004); see Fla. R.App. P. 9.146(g) (prioritizing appeals in termination of parental rights cases). The intended one-year period for reunification of Appellant and her child was already extended four-fold. Thus, due process required nothing more than what the Department provided to Appellant in this case, and no further extension of time was necessary, given the particular circumstances.

III. Termination of Physical Visitation and Limitation of Other Contact With Child
Appellant has not met her burden to show an abuse of discretion in the trial court's ruling on post-termination communications between Appellant and B.W. The visitation specialists testified that although the visitations between Appellant and her child were generally very pleasant, their interaction did not indicate a parent-child relationship. Rather, their communications were more in the nature of child-to-child interplay, and Appellant required constant supervision to assure that the child was handled safely, was monitored while negotiating stairs and being around electrical outlets, and was properly removed from the high-chair. Appellant was easily distracted by other visitors or toys, sometimes leaving B.W. to play alone.
Section 39.811(7)(b), Florida Statutes (2006), gives the trial court discretion to allow continued parent-child contact or other communication, if appropriate and in the child's best interests, after a termination of parental rights. See Dep't of Children & Family Servs. v. A.D., 904 So.2d 480, 482 (Fla. 1st DCA 2005). The trial court relied on Dr. Oseroff's specific expert recommendations to devise an appropriate plan for maintaining limited written communications between Appellant and her child, without any physical visitation post-termination.
For all of these reasons, the order terminating Appellant's parental rights is AFFIRMED in all respects.
ALLEN and VAN NORTWICK, JJ., concur.