FULMER, Chief Judge.
N.D., the Mother, appeals from an adjudication of dependency as to her daughter, T.B. Because we conclude that the evidence was legally insufficient to support the adjudication, we reverse the trial court’s Order of Adjudication, Findings of Fact, Disposition, and Acceptance of Case Plan.

*1193
Facts and Procedural History

T.B. was sheltered in August 2005 when she was just over one year old. The Department of Children and Family Services filed a Verified Petition Alleging Dependency, listing a single count of neglect against the Mother based on three theories: T(A) engaging in or permitting incidents of domestic violence to occur in the presence or proximity of T.B.; I(B) having a chronic or severe substance abuse problem that demonstrably adversely affects T.B.; and I(C) having no stable place of residence.[1] At the adjudicatory hearing, after the Mother had moved for a judgment of dismissal following the Department’s case-in-chief, the Department stipulated to a dismissal of count I(A), and the court granted the motion as to count I(B). Ultimately, the court found T.B. dependent as to the Mother by a preponderance of the evidence, based on the following findings:
The Mother, [N.D.], neglected the Child by depriving the Child, or allowing the Child to be deprived of, necessary food, clothing, shelter, or medical treatment or permitting the Child to live in an environment where such deprivation or environment to be in danger of being significantly impaired in the following manner [sic]:
(A) The Mother has no stable place of residence.
These activities and/or environments, either individually or collectively, cause the Child’s physical, mental or emotional health to be in danger of being significantly impaired.
The order originally read:
The Mother, [N.D.], neglected the Child by depriving the Child, or allowing the Child to be deprived of, necessary food, clothing, shelter, or medical treatment or permitting the Child to live in an environment where such deprivation or environment caused the Child’s physical, mental or emotional health to be significantly impaired or to be in danger of being significantly impaired in the following manner: ..
Using a pen, the trial judge struck out the phrase shown emphasized here and initialed the change in the margin of the order. As a result of this revision, the remaining language became garbled. Judging from the stricken text itself and the discussion among the court and counsel at the disposition concerning how the original written order should be altered, it appears that the intention was to delete any findings as to existing neglect, see § 39.01(14)(a), Fla. Stat. (2004), and retain findings as to prospective- neglect, see § 39.01(14)(f). However, to ensure a complete analysis, our discussion will address both existing neglect and prospective neglect.

Discussion

The Department is required to establish a child’s state of dependency by a preponderance of the evidence. § 39.507(1)(b); Fla. R. Juv. P. 8.330(a). “A court’s final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record.” In re M.F., 770 So.2d 1189, 1192 (Fla.2000).
Section 39.01(14) provides that a
“[e]hild who is found to be dependent” means a child who, pursuant to this chapter, is found by the court:
*1194 [[Image here]]
(a) [t]o have been abandoned, abused, or neglected by the child’s parent or parents or legal custodians;
(f) [t]o be at substantial risk of imminent abuse, abandonment, of neglect by the parent or parents or legal custodians.
Here, the Department’s petition alleged only neglect, not abuse or abandonment.[2] Neglect occurs
when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.
§ 39.01(45).
At the adjudicatory hearing, the testimony concerning the Mother’s residential history was given by the Mother herself. The Mother testified that for about three years prior to the events that gave rise to the sheltering of T.B., she lived with her own mother at a certain address. T.B. was born toward the end of this period. In late 2004 or early 2005, when T.B. was several months old, the Mother moved out to live with her boyfriend. However, because the boyfriend was violent toward the Mother, this arrangement lasted only a month, after which she once again moved back with her mother. She then moved to a different residence, along with her mother and her mother’s new boyfriend. The Mother testified that she had to move out because “they told me I couldn’t stay there” when her mother was to serve as a shelter placement for T.B. The Mother moved to her paternal grandmother’s home in Virginia, where her father also lived.
We agree with the Mother’s argument that these several moves, in and of themselves, do not satisfy the statutory definition of neglect found in section 39.01(45). No evidence was presented to demonstrate that the residential changes caused T.B. to be deprived of food, clothing, shelter, or medical treatment or that T.B.’s environment had caused her health to be significantly impaired. We note that there were fewer moves in this case than in In re E.B., 834 So.2d 415, 416-17 (Fla. 2d DCA 2003), in which we held that the mother and child’s seven moves in eight months did not rise to the level of statutory neglect. As such, we conclude that the evidence was insufficient to support an adjudication of dependency based on existing neglect pursuant to section 39.01(14)(a).
We also conclude that this record does not support the adjudication of dependency based on prospective neglect. “While prospective neglect or abuse can be a basis for an adjudication of dependency, the Department must meet the statute’s imminency requirement.” In re J.L., 824 So.2d 1023, 1025 (Fla. 2d DCA 2002); see § 39.01(14)(f). “Prospective” means likely to happen or expected; “imminent,” referring to a narrower timeframe, means impending or about to occur. J.L., 824 So.2d at 1025. The courts have generally required that the Department demonstrate a nexus between the parent’s alleged problem (here, the Mother’s alleged lack of a stable residence) and the potential for neglect of the child in the future. See, e.g., J.L., 824 So.2d at 1025 (reversing adjudication of dependency after concluding that the failure of the father, who suffered from diabetes, hypertension, and other health problems, “to follow all directions as to his *1195 own health regimen does not necessarily mean that he will neglect [his child’s] needs”); E.M.A v. Dep’t of Children & Families, 795 So.2d 188 (Fla. 1st DCA 2001) (affirming finding of dependency when expert testimony established that the father’s willful drug use and refusal to take prescribed medications would inevitably lead to a manic episode, placing his children at risk of neglect or abuse); Richmond v. Dep’t of Health & Rehabilitative Servs., 658 So.2d 176 (Fla. 5th DCA 1995) (affirming adjudication of dependency based on substantial risk of imminent abuse or neglect when evidence demonstrated a nexus between mother’s mental health problems and her potential to harm her daughter).
Here, the Department failed to adduce evidence demonstrating that the Mother’s several changes of residence should compel a finding that T.B. was at “substantial risk of imminent ... neglect,” § 39.01(14)(f), i.e., that T.B. would likely “be deprived of, necessary food, clothing, shelter, or medical treatment” or be living in an environment that would cause her “physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired,” § 39.01(45). Other than the conclusory statement that “[t]he Mother has no stable place of residence,” the trial court’s written order contains no specific findings of fact that would support an adjudication of dependency based on prospective neglect. Section 39.507(6) requires that “[i]f the court finds that the child named in a petition is dependent, ... it shall incorporate that finding in an order of adjudication entered in the case, briefly stating the facts upon which the finding is made.” (Emphasis added).
The trial court’s oral findings recited at the end of the adjudicatory hearing are more detailed than the written findings but still do not support a finding of prospective neglect. The trial court stated, “[t]he evidence demonstrates that mom has not had a place of her own.” This is no doubt true of many young people, whether they live with others by choice or necessity. The court continued, “She has been in places that she could get kicked out of by people who own the places.” However, there was no evidence that the Mother’s mother “kicked her out” or would have done so; when the Mother left her boyfriend due to his domestic violence, she was able to return to her mother’s residence. We also note that the Mother’s move to Virginia was prompted by the Department advising her that she could not continue to reside with her mother while her mother served as a shelter placement for T:B. Further, although the Mother’s father initially testified that the Mother could not stay with him in Virginia if she were to begin using drugs, he qualified this statement by saying that he would not put her out on the street and would seek help for her. In fact, the Mother’s father expressed a strong willingness to help his daughter and his granddaughter. As the Mother’s counsel pointed out in his closing argument, the Department presented no evidence that the child was in any way adversely affected by moving to three different places within a three-year period or that the child is at imminent risk of neglect based on residential instability.
We conclude that the evidence was insufficient to establish either existing or prospective neglect by the Mother based on the Department’s allegation of residential instability and, therefore, reverse.
Reversed.
NORTHCUTT and CASANUEVA, JJ., Concur.

. T.B.'s father was named in a separate count in the petition, but consented to dependency and is not a party to this appeal.

. The Department’s appellate brief asserts that this case “is based upon risk of imminent abuse or neglect,” but the dependency petition alleges only neglect.