NORTHCUTT, Judge.
J.C. is the father of two children who were adjudicated dependent both as to him and as to their mother, L.R.[1] He contends that the evidence was insufficient to support the dependency and that the adjudication was procedurally deficient as well. We need not address J.C.’s procedural complaints, because we reverse the dependency adjudication for lack of evidence.
The petition for dependency[2] alleged that the children were at “substantial risk or imminent threat of harm o[r] abuse or neglect” from J.C. on two bases — inadequate supervision, § 39.01(30)(a)(3), Fla. Stat. (2005); and violence, § 39.01(30)®. *1248 See § 39.01(14)(f). The circuit court dismissed the charge of inadequate supervision during the adjudicatory hearing. The court based its finding of dependency as to J.C. solely on allegations of domestic violence in the family. Consequently, we will discuss the evidence the Department of Children and Family Services- presented against both parents.
To prove J.C.’s violence, DCF introduced a police report from 1999, in which L.R. accused him of stalking and threatening her, and a 1998 police report of an incident in which L.R. claimed that J.C. had hit her in the eye.[3] As proof of L.R.’s violent behavior, DCF relied on a petition for a domestic violence injunction that J.C. had filed against her in February 2004. In the petition, J.C. alleged that L.R. struck him, threw a bottle at him, tossed hot coffee on him while he was driving, pulled his hair, and took one of their children with her on an outing to purchase crack cocaine. At the adjudicatory hearing, both parents disputed the accuracy of these documents. DCF also questioned L.R. about a 1997 episode in which she shot J.C. in their home. L.R. explained that at the time of the incident she had believed that J.C. was out of town. She shot him because she mistook him for an intruder. She claimed that she had immediately realized her mistake and sought medical assistance for him.
The parties’ oldest child was born in 2000. Thus, all of J.C.’s alleged violent acts occurred before the children were born. Obviously, then, DCF did not contend that the children were actually harmed or abused by J.C.’s behavior. Rather, the Department maintained that the children were at substantial risk of prospective harm or abuse.
In its oral findings, the circuit court agreed that the domestic violence placed the children at risk of abuse and neglect. See § 39.01(14)(f). The court discounted J.C.’s and L.R.’s explanations of the incidents that occurred before the children were born. In its written order, the court found that “the mother and the father engaged in domestic violence in the presence of the children,” based on the incidents alleged in J.C.’s 2004 petition for a domestic violence injunction. The court specifically rejected J.C.’s assertion that, when completing the form petition, he had mistakenly checked a box to indicate that the acts had taken place in the children’s presence.
We review a dependency adjudication for an abuse of discretion. An adjudication of dependency will be upheld if the court applied the correct law and its factual rulings are supported by competent substantial evidence. See R.F. v. Dep’t of Children & Families (In re M.F.), 770 So.2d 1189, 1192 (Fla.2000).
Domestic violence may constitute either harm to a child’s health or welfare as defined in section 39.01(30), or abuse of a child as defined in section 39.01(2). Harm to a child’s welfare can occur when a person “[ejngages in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child.” § 39.01(30)(i). However, domestic violence *1249 may constitute “harm” only if it occurs in the child’s presence. M.B. v. Dep’t of Children & Family Servs. (In re K.B.), 937 So.2d 709, 710 (Fla. 2d DCA 2006); S.B. v. Dep’t of Children & Family Servs. (In re E.B.), 834 So.2d 415, 416 (Fla. 2d DCA 2003). There must be evidence that the child has seen the violence or was aware of it. A.R. v. Dep’t of Children & Family Servs. (In re J.A.H.), 876 So.2d 647, 649 (Fla. 2d DCA 2004); D.D. v. Dep’t of Children & Families, 773 So.2d 615, 617-18 (Fla. 5th DCA 2000). For domestic violence to constitute “abuse,” the child must have witnessed the violence and the violence must have resulted in some physical, mental, or sexual injury to the child. M.B., 937 So.2d at 711; W.T. v. Dep’t of Children & Families, 787 So.2d 184, 185 (Fla. 5th DCA 2001).
Section 39.01(14)(f) permits an adjudication of dependency if the court finds the children “[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians,” even if no actual abuse is proved. But this prospective abuse must be “imminent.” See N.D. v. Dep’t of Children & Family Servs. (In re T.B.), 939 So.2d 1192, 1194 (Fla. 2d DCA 2006). Thus, the issue is whether “future behavior will adversely affect the child and can be clearly and certainly predicted.” F.S.G. v. Dep’t of Children & Family Servs. (In re P.S.), 825 So.2d 530, 531 (Fla. 2d DCA 2002). Put another way, the court must determine whether the prospective abuse is “likely to happen” or “expected.” J.L. v. Dep’t of Children & Family Servs. (In re J.L.), 824 So.2d 1023, 1025 (Fla. 2d DCA 2002). Moreover, courts have required a nexus between the parent’s alleged behavior and the potential for future abuse of the child. See N.D., 939 So.2d at 1194.
Where there is a history of domestic violence, the prior incidents may support a finding that there is a threat of prospective harm, thus permitting a dependency adjudication under section 39.01(14)(f). See M.B., 937 So.2d at 711. For example, in T.R. v. Department of Children & Families, 864 So.2d 1278 (Fla. 5th DCA 2004), the court affirmed the dependency adjudication of T.R.’s two teenaged children based on a risk of harm stemming from domestic violence. T.R. threatened his girlfriend with a knife while she was holding their baby, and the teenagers overheard the altercation from their bedrooms. But the district court acknowledged that it was a close call whether the dependency could be supported on the basis of one act of domestic violence. The court affirmed because it was swayed by the father’s domestic violence history and by the fact that the violence against his girlfriend was accomplished with a deadly weapon.
In contrast to T.R,., here DCF presented no evidence that J.C. had ever committed a violent act in the children’s presence. In its dependency order, the court found that “the mother and the father engaged in domestic violence in the presence of the children,” based on the allegations in J.C.’s petition for a domestic violence injunction. That document was DCF’s only evidence that violent acts had taken place in the children’s presence. But J.C. filed that petition as the victim of violence; the petition spoke only of violent acts committed by the children’s mother. Accordingly, there was no competent evidence to support the court’s finding concerning J.C.
Moreover, DCF did not introduce any evidence that J.C. engaged in domestic violence after the children were bom. Indeed, the most recent incident was in 1999, some six years before the dependency trial in this case. Cf. F.S.G., 825 So.2d at 530 (noting that evidence of the father’s DUI *1250 arrest six years earlier and long before his child was born, was not, by itself, relevant to any material fact at issue).
Vis-á-vis this issue, this case is similar to R.S. v. Department of Children & Families, 881 So.2d 1130 (Fla. 4th DCA 2004). There, the trial court found that the children were in imminent danger of harm from R.S. because he had trouble controlling his anger as evidenced by several petitions for domestic violence filed against him. All the petitions had been dismissed, and the incidents alleged in them had taken place when the children were not in contact with their father. DCF presented no evidence that any of the incidents occurred in the presence of R.S.’s children or that he had endangered them by displaying anger or violence. The Fourth District held that the court’s finding was speculative and unsupported by competent substantial evidence. Id. at 1134.
The finding here, J.C. posed a risk of abuse or neglect of his children, is equally speculative and unsupported. The evidence of his violence against an adult, L.R., before the children were born, was not predictive of abuse of his children. See F.S.G., 825 So.2d at 531. There being no evidence that J.C. had engaged in domestic violence in the presence of the children — which was necessary to prove either harm under section 39.01(30) or abuse under section 39.01(2) — DCF failed to prove a nexus between his prior acts of domestic violence against the children’s mother and the potential for imminent abuse of the children in the future. See N.D., 939 So.2d at 1194; J.L., 824 So.2d at 1025.
Therefore, we reverse the adjudication of dependency as to J.C. We note that the record contains allegations against him that arose after DCF filed the dependency petition at issue in this case and that were not addressed at the trial below. Our decision today is grounded solely on the evidence presented at that trial.
Reversed.
CASANUEVA and SALCINES, JJ., Concur.

. Our opinion in L.R. v. Department of Children & Family Services, 947 So.2d 1240 (Fla. 2d DCA 2007) is being issued simultaneously with this opinion.

. The second amended petition for dependency.

. L.R.'s police reports, which DCF used to substantiate J.C.’s violence, were hearsay. § 90.801(1), Fla. Stat. (2005). At trial, L.R. contended that the reports did not accurately recount the statements she made to the police. Because we hold that these documents did not support the dependency adjudication as to J.C., we will not discuss whether the reports might have been admissible as substantive evidence pursuant to the hearsay exception in section 90.801(2). We have addressed that issue in the opinion in the mother's appeal. See L.R., 947 So.2d at 1244.