979 So.2d 1202 (2008)
In re T.S., N.S., and J.S., minor children.
J.S., Appellant,
v.
Department of Children and Family Services, and Guardian Ad Litem Program, Appellees.
No. 2D07-888.
District Court of Appeal of Florida, Second District.
April 25, 2008.
Anthony W. Surber of Harbsmeier, DeZayas, Harden & DeBari, Lakeland, for Appellant.
Douglas B. Sherman, Department of Children and Family Services, Bartow, for Appellee, Department of Children and Family Services.
Wendie Michelle Cooper, Guardian ad Litem Program, Orlando, for Appellee, Guardian Ad Litem Program.
CASANUEVA, Judge.
Appellant, J.S. (the Mother), whose three minor children[1] were found to be dependent as to her, challenges that determination asserting, first, that the trial court failed to comply with the statutory requirement to set forth factual findings supporting a determination of dependency and, second, that the evidence presented at the hearing was legally insufficient to sustain the trial court's determination of dependency. We agree and reverse.

BACKGROUND
Appellee, the Department of Children and Family Services (DCF), commenced the instant proceeding by sheltering the three children and later filing a petition seeking dependency, alleging that they have been abused, abandoned, or neglected by the Mother, constituting dependency pursuant to section 39.01(14)(a), Florida Statutes (2006), and that each child was at risk of imminent abuse, abandonment, or neglect, constituting dependency pursuant to section 39.01(14)(f). More specifically, DCF pleaded that the alleged neglect consisted of the Mother failing to adequately supervise her children in that they were allowed to live in a home where a recent rape and beating had occurred, an incident of which the Mother was unaware. DCF further alleged that the Mother did not act *1204 to protect her children and, further, that the youngest, J.S., was found walking unattended at the side of a busy highway and taken to the Sheriff's Office.
At the December 2006 dependency hearing, a DCF employee testified that the "main reason we took the children from that house is because the mother has no control over the property. The mother had no idea that a violent rape had occurred at that house earlier that morning while she was gone." Additionally, the DCF employee described the generally poor condition of the home: windows were broken, the plumbing leaked, and there were holes in and gang graffiti on the interior walls.
The Mother testified that she had lived in the town of Eloise with her mother in that house for over a decade, and her mother had recently passed away. At the time of the rape, early Sunday morning, August 20, 2006, the Mother was at her boyfriend's home about three miles away in the nearby town of Wahneta, spending the night there. Her two older children were spending the night with neighbors and J.S. was staying with a classmate. The rapist had entered the home without permission, and no evidence placed the Mother or any of her children there at the time the crime was committed or indicated that the children had returned home on their own afterwards.
A deputy sheriff testified that around 6:30 p.m. on Sunday, August 20, 2006, he was in uniform and driving an unmarked truck when he observed the child, J.S., walking alone near a two-lane road. J.S. was leaving a residential, commercial, and school zone area of Eloise and had entered a rural area, walking towards Wahneta. The officer testified that J.S. was walking eastbound with his head down, facing the ground, in the grassy area, about eighteen to twenty-four inches from the asphalt roadway. Concerned for the child's safety, the deputy stopped and spoke with him. J.S. told the deputy that he was headed to meet his mother. The deputy offered and the child accepted a ride, and the pair proceeded to the boyfriend's home in Wahneta, looking for the Mother. The Mother was not there and the deputy was advised that she had returned home. The deputy took J.S. home but the Mother was not there either. The child gave the deputy the home phone number, but when the deputy called, no one answered, although he could hear the telephone ringing inside. After waiting for a period of time for her to return, the deputy resumed his search for the Mother, making several trips over the route she was expected to take, but in vain. Ultimately, around 9 p.m., the deputy called the DCF's hot line and a DCF representative arrived at the nearby Sheriff's substation and took J.S. into DCF custody. Later that evening, the Mother was contacted by phone, but DCF kept the child overnight because she had no transportation at that time. The next day, the DCF representative took J.S. back to the Mother at the family's home, but when he saw the condition of the home, he kept the child and took the other two children into custody also. Except for the evidence that the two older children were at a neighbor's house overnight that night and were not present when the crime occurred at their home that early morning, nothing else was mentioned about them.
In the order of dependency, at paragraph four, "Findings of Fact," the trial court wrote the following: "The factual basis for the adjudication of dependency is as follows: Findings as to Mother: The Mother failed to adequately supervise her children." Nothing more was added.

STANDARD OF REVIEW
This court reviews an adjudication of dependency under an abuse of discretion *1205 standard. J.C. v. Dep't of Children & Family Servs. (In re L.C.), 947 So.2d 1246 (Fla. 2d DCA 2007). To support the determination of dependency, there must be substantial, competent evidence in the record. A.A. v. Dep't of Children & Families, 908 So.2d 585 (Fla. 5th DCA 2005). "In a dependency proceeding, DCF must establish its allegations by `a preponderance of the evidence.'" R.F. v. Fla. Dep't of Children & Families (In re M.F.), 770 So.2d 1189, 1192 (Fla.2000) (quoting Fla. R. Juv. P. 8.330(a)). Generally, when the trial court fails to enter particularized findings, the cause is reversed and remanded to enter appropriate factual findings. C.D. v. Dep't of Children & Families, 974 So.2d 495, 501 (Fla. 1st DCA 2008). But if the evidence before the trial court is legally insufficient to sustain the finding of dependency, reversal without remand is in order. See id. (citing In re G.D.H., 498 So.2d 676 (Fla. 1st DCA 1986) (reversing an adjudication of dependency where the trial court failed to list adequate factual findings and the record did not support a finding of dependency)).

DISCUSSION
Section 39.507(6) provides that where "the court finds that the child named in a petition is dependent, . . . it shall incorporate that finding in an order of adjudication entered in the case, briefly stating the facts upon which the finding is made. . . ." A similar requirement is found in Florida Rule of Juvenile Procedure 8.330(g).[2] Clearly, one purpose of these requirements is to facilitate appellate review. An equally important purpose is to ensure compliance with the legislatively mandated requirements so that no child will be found dependent except upon legally sufficient evidence. In this case, the trial court's factual findings are beyond brief; they are practically nonexistent. More importantly, the one statement the trial court did make  that the Mother failed to supervise her children  is not supported by the evidence before it.
Simply stated, the findings are defective in that they fail to particularize how the Mother's conduct constituted a failure to supervise. Except for the fact that J.S. left his classmate's home and set out alone to meet his mother as instructed by her, at no time did the evidence suggest that any of the children were unsupervised. While lacking immediate parental supervision during the walk, the record does not disclose that the child's path placed him in a dangerous situation. And although the family home may have been in substandard condition, there was no evidence that it was unsafe or that any child was ever left there unsupervised. Similarly, although DCF alleged that the Mother had no control over her property, and this lack of control allowed criminal conduct to occur there, there is an absence of record evidence actually linking the Mother's absence directly to the criminal conduct. The record does establish that the Mother was not present at the time of the crime and had no foreknowledge of it. The children were also out of the home when it became a crime scene.
In light of the trial court's insufficient findings of fact, and if the evidence before the court were conflicting as to the Mother's failure to supervise, we would ordinarily reverse and remand for the appropriate findings. However, the record *1206 before the trial court is not conflicting. It simply does not contain substantial, competent evidence to support dependency as to any of these three children. Accordingly, we reverse the order of dependency. See C.D., 974 So.2d at 501 ("In other words, the order in this case is not merely procedurally flawed, but it is also substantively flawed.") (citations omitted.)
Reversed.
SALCINES and SILBERMAN, JJ., Concur.
NOTES
[1] At the time they were sheltered, the children were 12½, 11½, and 8½. The child J.S. is the youngest.
[2] "In all cases in which dependency is established, the court shall enter a written order stating the legal basis for a finding of dependency, specifying the facts upon which the findings of dependency is based, and stating whether the court made the finding by a preponderance of the evidence or by clear and convincing evidence." Fla. R. Juv. P. 8.330(g).