NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

In the Interest of X.W., a child.                    )
                                                     )
―――――――――――――――――――――――――                              )
                                                     )
GUARDIAN AD LITEM PROGRAM,                           )
                                                     )
          Appellant,                                 )
                                                     )
v.                                                   )     Case No. 2D17-1807
                                                     )
C.W. and DEPARTMENT OF CHILDREN                      )
AND FAMILIES,                                        )
                                                     )
          Appellees.                                 )
                                                     )
―――――――――――――――――――――――――                              )

Opinion filed February 9, 2018.

Appeal from the Circuit Court for Lee
County; Amy Hawthorne, Judge.

Sara Elizabeth Goldfarb, Sanford, for
Appellant.

Toni A. Butler of Alderuccio & Butler,
LLC, Naples, for Appellee C.W.

No appearance for remaining Appellee.


SALARIO, Judge.

          The Guardian ad Litem Program (GAL) appeals from a final order denying

its petition to terminate the parental rights of C.W., the father of X.W.  X.W. was

conceived as the result of a sexual battery by C.W. upon X.W.'s mother—a minor.  The

trial court found that the sexual battery and C.W.'s lengthy incarceration for that offense established statutory grounds for termination, but it denied the petition on the basis that termination would not be in X.W.'s best interests and was not the least restrictive means of protecting him from harm. The best interests and least restrictive means findings are legally and factually infirm. We reverse.

I.

The GAL filed a petition for the termination of C.W.'s parental rights on October 14, 2016. The petition alleged five statutory grounds for termination: (1) C.W.'s involvement with X.W. was a threat to X.W.'s life, safety, and well-being under section 39.806(1)(c), Florida Statutes (2016); (2) C.W. was incarcerated and expected to remain so for a significant portion of X.W.'s minority under section 39.806(1)(d); (3) C.W. had engaged in egregious conduct that threatened the life, safety, or health of X.W. under section 39.806(1)(f); (4) C.W. had subjected the child or another child to a sexual battery under section 39.806(1)(g); and (5) X.W. had been conceived as the result of a sexual battery made unlawful by section 794.011, Florida Statutes, under section 39.806(1)(m). Each ground was based on C.W.'s sexual battery of X.W.'s mother. The GAL alleged that termination of C.W.'s parental rights was in X.W.'s best interests because of the gravity of the offense committed by C.W., the lack of any significant relationship between C.W. and X.W., and the strength of X.W.'s relationship with his maternal grandmother, who is available to adopt X.W.

The case proceeded to an adjudicatory hearing, see § 39.809, at which the evidence established the following. On the evening of September 22, 2013, S.B. ran away from home for one night. She was eleven years old at the time. While away, she met C.W. in a park. He was twenty-five. C.W. took S.B. to his apartment and had

sex with her.  No one disputes that this was an unlawful sexual battery in violation of section 794.011.  X.W. was conceived as a result and was born on May 29, 2014.

C.W. pleaded guilty to one count of lewd or lascivious battery and one count of impregnating a child under the age of sixteen.[1]  On December 15, 2014, he was sentenced to ten years' imprisonment and qualified as a sexual offender.  His anticipated release date is in 2024, at which point X.W. will be ten years old.  Upon release, C.W. will be subject to five years of sex offender probation, which includes significant restrictions on his ability to parent X.W.  According to the probation orders in the record, he will be unable to have unsupervised contact with X.W. and will be allowed supervised contact only upon the recommendation of a qualified practitioner in a sexual offender treatment program who bases the recommendation on a risk assessment.  He also will be unable to have any contact with S.B. unless the contact is approved by S.B., a qualified practitioner, and the sentencing court.  And he will be unable to live within 1000 feet of a school, child care facility, park, playground, or other place where children regularly congregate.

X.W. was sheltered, adjudicated dependent as to both C.W. and S.B., and placed with his maternal grandmother—S.B.'s mother.  By everyone's account, X.W.

---

[1]Lewd or lascivious battery under section 800.04(4)(a), Florida Statutes (2013), criminalizes "sexual activity" with a minor, the definition of which is identical to the definition of the term "sexual battery" under section 794.011(h), Florida Statutes (2013).  See § 800.04(1)(a); see also Guardian Ad Litem Program v. M.H., 184 So. 3d 1253, 1256-57 (Fla. 4th DCA 2016) (holding that (1)(m) applies upon proof that a child "was conceived as a result of . . . conduct deemed unlawful pursuant to section 794.011(8)(a)" and that "[w]e do not construe the requirement that a trial court must *accept* a guilty plea or conviction as conclusive proof of a violation of section 794.011 as an element *requiring* a guilty plea or conviction for TPR under that ground").  Impregnation of a minor under sixteen by a person over twenty-one is a violation of section 827.04(3), Florida Statutes (2013), and is part of the child abuse statutes.

looks to his maternal grandmother as his mother figure. The two are closely bonded, and X.W. goes to his grandmother for love and affection. X.W.'s maternal grandmother handles all the day-to-day duties a parent would ordinarily handle for a child. She is willing to take care of X.W. as long as necessary and is also willing to adopt him. She wants to wait on adoption until S.B. turns eighteen, however, so that S.B. has a chance to make her own decision about whether she wants to be a parent to X.W.[2]

S.B. lives in the home with X.W. At the time of the hearing, she was fifteen years old and in ninth grade. S.B.'s relationship to X.W. is akin to a brother-sister relationship. S.B. is interested in things most fifteen-year-olds are interested in—things like going to school and being with friends. While there is love between S.B. and X.W., S.B. is not his caregiver. There was no evidence that S.B. is likely to be willing and able to be X.W.'s caregiver when she turns eighteen.

X.W.'s maternal grandmother testified that C.W. sent her a care package around the holidays and also wrote a letter to her in which he asked about X.W. She also testified that C.W.'s family, with her approval, had been taking X.W. to visit with C.W. in prison every two weeks until the termination proceedings were instituted.[3] A representative of the GAL testified that there is not a current bond between C.W. and X.W. and that forming a bond after C.W. is released from prison would be very difficult

---

[2]The trial court found that the maternal grandmother testified that she wanted to give "both the mother and father a chance to raise the child." That finding is not supported by competent substantial evidence because that is not how the grandmother testified. She testified as described in the text.

[3]It appears that the sentencing court in C.W.'s criminal case consented to these visits.

due to the conditions of C.W.'s probation. There was no evidence that C.W. is likely to be willing or able to be a parent to X.W. when released from prison.

The trial court denied the GAL's petition. As to the grounds for termination, the trial court found that the GAL had proven both that C.W. would be incarcerated for a significant portion of X.W.'s minority—establishing a ground for termination under section 39.806(1)(d)—and that X.W. was conceived as the result of a sexual battery on S.B. that was unlawful under section 794.011—establishing a ground for termination under section 39.806(1)(m). It found that the GAL failed to establish grounds for termination based on a continued threat to X.W. under section 39.806(1)(e) or sexual abuse or battery under section 39.806(1)(g), in both instances because the evidence was insufficient to show any continuing risk of harm to X.W. in the absence of a termination of C.W.'s parental rights. The trial court found that the GAL waived its allegations that termination was justified based on egregious conduct under section 39.806(1)(f).

With regard to X.W.'s manifest best interests, the trial court explained that the fact that X.W. was conceived as a result of a sexual battery by C.W. gave rise to a statutory presumption that termination was in X.W.'s best interests. See § 39.806(1)(m). It also made findings as to each of the eleven manifest best interest factors in section 39.810. Those findings either weighed in favor of the conclusion that termination was in X.W.'s best interests or were neutral.[4] For example, the trial court

_____

[4]The only factors that did not weigh in favor of termination were those under section 39.810(1), dealing with the existence of a suitable permanent custody arrangement with a relative, and section 39.810(10), pertaining to the child's preferences, which the trial court correctly found he was unable to express. These amounted at most to neutrals under the circumstances of this case. See § 39.810(1) (stating that the existence of a suitable permanent custody arrangement "may not

- 5 -

found that there is no significant love, affection, or emotional bond between C.W. and X.W. See § 39.810(5). It found that C.W. lacked the current ability and disposition to provide the child with food, clothing, medical care, and other remedial care and that there was no evidence that he would have this capacity in the future. See § 39.810(2). It found that C.W. lacked the current capacity to care for X.W. such that X.W.'s safety, well-being, and health would not be endangered and that there was no evidence of his ability to provide that care in the future. See § 39.810(3). It found that X.W. had formed a significant relationship with a parental substitute—the maternal grandmother—and that the bond between them was strong. See § 39.810(7). And it found that the GAL had recommended termination and that it accepted the GAL's testimony regarding X.W.'s manifest best interests. See § 39.810(11). Notwithstanding the statutory presumption and these separate findings, the trial court concluded that termination was not in X.W.'s best interests because (1) even if X.W. was adopted by his maternal grandmother, "it is highly probable that the child would, in reality, be raised by the mother and father if they desired to do so" and (2) termination would sever C.W.'s potential financial support for the child without severing contact between C.W. and X.W.

The trial court also found that termination of C.W.'s parental rights was not the least restrictive means of protecting X.W. It based this finding on its determinations that X.W. was not at risk of harm based on C.W.'s sexual battery of S.B. and that because he had been incarcerated, C.W. had not been offered services that might

receive greater consideration than any other factor weighing on the manifest best interest of the child and may not be considered as a factor weighing against termination of parental rights"), (10) (stating that a court may consider a child's preferences "if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference").

permit the safe reestablishment of the parent-child bond.  Finding that the GAL had not carried its burden as to manifest best interests or least restrictive means, the trial court denied the GAL's petition.  This appeal timely followed.

II.

There is no dispute in this appeal that the trial court correctly found that the GAL proved grounds for termination under section 39.806(1)(d) and (m).  The GAL raises three issues: (1) that the trial court erred in refusing to find that it established grounds for termination under section 39.806(1)(g) based on C.W.'s sexual abuse of S.B.; (2) that the trial court erred in determining that termination was not in X.W.'s manifest best interests; and (3) that the trial court erred in determining that termination was not the least restrictive means of protecting X.W.  We find merit in the second and third grounds, which taken together require a reversal, and decline to reach the first.

Before it may grant a petition to terminate parental rights, a trial court must find two statutory requirements satisfied by clear and convincing evidence: the existence of a ground for termination under section 39.806 and that termination would be in the child's manifest best interests under section 39.810.  § 39.809(1); Dep't of Children & Family Servs. v. S.H., 49 So. 3d 846, 851 (Fla. 2d DCA 2010).  In addition, because a termination implicates the due process rights of both parent and child, the party seeking termination is constitutionally required to prove that termination is the least restrictive means of protecting the child from harm.  S.M. v. Dep't of Children & Families, 202 So. 3d 769, 772 (Fla. 2016) (citing Padgett v. Dep't of Health & Rehab. Servs., 577 So. 2d 565, 571 (Fla. 1991)).  We may reverse an order denying a petition to terminate parental rights when the trial court makes an error of law, see Dep't of Children & Family Servs. v. T.C., 95 So. 3d 1050, 1050 (Fla. 2d DCA 2012), or its denial

is not supported either by competent substantial evidence or by the best interests of the child, see S.H., 49 So. 3d at 851.

A.

In this case, the trial court's finding that termination was not in the child's best interests is unsupported by competent substantial evidence.

Once it determined by clear and convincing evidence that X.W. was conceived through unlawful sexual battery under section 794.011, the trial court was required to presume that termination of C.W.'s parental rights was in the best interests of X.W. See § 39.806(1)(m) ("It is presumed that termination of parental rights is in the best interest of the child if the child was conceived as the result of the unlawful sexual battery."). The trial court's determination that X.W. was conceived through an unlawful sexual battery under section 794.011, based both on the elements of the charges to which C.W. pleaded and the evidence presented at the hearing, is supported by clear and convincing evidence. See Guardian ad Litem Program v. M.H., 184 So. 3d 1253, 1257 (Fla. 4th DCA 2016). Thus, the trial court was obligated to find that termination of C.W.'s parental rights was in X.W.'s best interests unless C.W. rebutted that presumption by, at a minimum, adducing credible evidence that would be sufficient to sustain a finding, contrary to the presumption, that leaving C.W.'s parental rights intact is in X.W.'s best interests.[5] See § 90.302(1), Fla. Stat. (2016) (stating the burden of a

_____

[5]Adjudicatory hearings in termination cases are governed by the "rules of evidence in use in civil cases." § 39.809(3). In civil cases, there are two types of evidentiary presumptions—those affecting the burden of producing evidence and those affecting the burden of proof. See § 90.302-.304, Fla. Stat. (2016); Universal Ins. Co. of N. Am. v. Warfel, 82 So. 3d 47, 51-54 (Fla. 2012) (describing and differentiating between the two types of presumptions). In this case, we need not decide into what category the presumption created by section 39.806(1)(m) falls. We assume without

- 8 -

party facing a presumption affecting the burden of production); cf. M.H., 184 So. 3d at 1258 (stating in dictum that "it is incumbent on M.H. to rebut the presumption" afforded by section 39.806(1)(m)).

Here, there was no credible evidence sufficient to show that having C.W. retain the right to parent X.W. is in X.W.'s best interests. C.W. did not produce any evidence at the hearing. And we see nothing in the evidence presented by the GAL that could have credibly shown that maintaining the parental rights of a man who, as a twenty-five-year-old, sexually battered an eleven-year-old girl, who will be incarcerated for that offense until the child is ten, and who will be subject to severely restrictive conditions of probation thereafter is in the child's best interests. On the contrary, on the facts as found by the trial court, the statutory factors governing the question of manifest best interests showed just the opposite.

The trial court's determination that the statutory presumption that termination was in X.W.'s best interests was rebutted was based first on its factual finding that C.W. and S.B. would likely raise X.W. upon C.W.'s release from prison. There is, however, no evidence in our record to show that C.W. and S.B. either intend or are likely to be able to work together and parent X.W. when C.W. is released from prison in 2024. Although he was present at the adjudicatory hearing, C.W. did not testify. S.B.'s testimony says nothing at all about her future desires and intentions. Further, as the trial court found, there was no evidence of C.W.'s future capacity to provide or care for X.W. The trial court's finding that C.W. and S.B. are likely to parent X.W. appears to have been based on speculation as to their future intentions and

deciding that the presumption affects the burden of production—the weaker of the two types of presumption—and conclude that C.W. has failed to rebut it.

- 9 -

capabilities. That speculation is not credible evidence rebutting the presumption that termination is in X.W.'s best interests. See J.C. v. Dep't of Children & Family Servs., 947 So. 2d 1246, 1250 (Fla. 2d DCA 2007) (rejecting "speculative and unsupported" findings of fact in a trial court's termination order (citing R.S. v. Dep't of Children & Families, 881 So. 2d 1130, 1134 (Fla. 4th DCA 2004))); see also RNK Family Ltd. P'ship v. Alexander Mitchell Assocs., 890 So. 2d 297, 299 (Fla. 2d DCA 2004) (holding that a witness's speculation does not qualify as competent substantial evidence supporting a trial court's decision).

The same problem affects the trial court's second basis for finding the presumption rebutted—namely, its finding concerning the father's future financial support of X.W. The trial court found that C.W. has no present ability to provide for X.W. financially. It also found that there was no evidence of C.W.'s future ability to provide for X.W. In the end, then, the trial court's concern about severing a potential source of financial support was based on a hope that someday C.W. might be in a position to provide for X.W. As with the trial court's finding about C.W. and S.B.'s ability to coparent X.W., that bare hope is not credible evidence sufficient to overcome the statutory presumption in favor of termination.

B.

As a matter of due process, the GAL was required to prove by clear and convincing evidence that there was a risk of harm to X.W. and that termination of C.W.'s parental rights was the least restrictive means to avoid it. See Padgett, 577 So. 2d at 571; see also Dep't of Children & Families v. F.L., 880 So. 2d 602, 608 (Fla. 2004). The trial court's finding that the GAL failed to prove a risk of harm was not supported by

- 10 -

competent substantial evidence. Furthermore, its related finding as to the least restrictive means is legally flawed.

The trial court found that there was no risk of harm to X.W. because he was not actually harmed by C.W.'s sexual battery of S.B. and there was "no evidence" that C.W. was likely to abuse X.W. in the future. Yet the evidence showed that twenty-five-year-old C.W. met S.B. at a park in the middle of the night, when S.B. was eleven and running away from home. C.W. could have called the police or tried to get S.B. somewhere safe. Instead, he took her to his apartment, had sex with her, and ejaculated inside her, causing her to become pregnant. In short, C.W. was willing to use a child—then roughly the same age as X.W. will be when C.W. is released from prison—to satisfy his own desires without regard to the radical change to the child's life and future that foreseeably could and in fact did result from his conduct.

We have been unable to find a case on facts like these, in which a petitioner seeks to terminate parental rights to a child produced by the parent's sexual battery of a minor without proof of actual harm to the child who is the subject of the termination proceedings. We find analogous, however, those cases in which courts have found evidence of a significant risk of substantial harm to a child where a parent's conduct concerning the abuse of one child demonstrates an inability on the part of that parent to provide a safe environment for another child who has not yet been abused. See, e.g., S.H., 49 So. 3d at 858 (reversing order denying termination of mother's parental rights to two children who were not abused where father killed a third child through abuse and mother was an admitted drug user who demonstrated an intention to continue her relationship with the father); T.O. v. Dep't of Children & Families, 21 So. 3d 173, 180 (Fla. 4th DCA 2009) (affirming order terminating mother's parental rights to

- 11 -

children who had not been abused by father where "[s]he demonstrated that she cannot provide a safe environment for the children"); Dep't of Children & Families v. B.B., 824 So. 2d 1000, 1008-09 (Fla. 5th DCA 2002) (reversing order denying termination of father's parental rights to two male children where the father had sexually abused female children and the father's religious views encouraged the kind of sexual abuse visited on the female children and stating "that the lower court erred in concluding that the egregious abuse [of the female children] could not support termination of parental rights as to the other children"); see also F.L., 880 So. 2d at 608 ("Implicit in our decision in Padgett is the recognition that in some cases, but not in all cases, a parent's conduct toward another child may demonstrate a substantial risk of significant harm to the current child.").  C.W.'s sexual abuse of S.B., regardless of whether it establishes that he is likely to sexually abuse X.W. in the future, at a minimum permits the inference that he is ready, willing, and able to use a child for his own purposes and without care for the consequences that could be visited on the child—thus creating a risk that X.W. will be harmed by C.W. in the future.  This is not a case where, as the trial court found, there was "no evidence" that an as-yet-unabused child was at risk of future harm from his parent.[6]

---

[6]The GAL argues that once it proved the ground for termination under section 39.806(1)(m), harm was established without need of any additional inquiry into the individual circumstances of the case.  Because the requirement of harm is a matter of due process, there is at least a question as to whether the GAL's construction of the statute would be constitutional.  See F.L., 880 So. 2d at 608-09 (rejecting as unconstitutional a construction of section 39.806(1)(i), establishing a ground for termination when the parent's rights to another child have been involuntarily terminated, as creating a rebuttable presumption in favor of termination).  This constitutional issue has not been briefed by the parties and, because we can resolve this appeal on the grounds stated in the text, we decline to reach or express any opinion about it.  See Martinez v. Heinrich, 521 So. 2d 167, 168 (Fla. 2d DCA 1988) (describing the

Furthermore, the trial court's finding that there is no risk of abuse to X.W. neglects to consider the potential emotional and permanency-related harms this record evidences.  There is substantial evidence here that reunification between C.W. and X.W. will be exceedingly difficult, if not impossible, to achieve.  As the trial court found, due to C.W.'s incarceration, there is no significant love, affection, or emotional bond between C.W. and X.W.  C.W. will remain in prison until X.W. is ten.  And for five years thereafter—assuming everything goes well—C.W. will be subject to conditions of sex offender probation that pose formidable challenges to the formation of anything resembling a conventional father-son bond with X.W.  See, e.g., Alvarado v. State, 205 So. 3d 810, 810-11 (Fla. 2d DCA 2016) (Villanti, C.J., concurring) (describing the consequences of the requirement that sexual offenders not live within 1000 feet of a childcare facility, school, park, or playground).  The continued parent-child relationship thus subjects X.W. to the potential harm of being forced to maintain a relationship under these circumstances and being delayed in establishing a more-or-less permanent parent-child relationship with the maternal grandmother.  See S.M., 202 So. 3d at 782 ("The 'right' of a parent to a bond with the child is important, but ultimately the health, welfare, and safety of the child must be paramount."); cf. Dep't of Children & Families v. B.C., 185 So. 3d 716, 718-19 (Fla. 1st DCA 2016) (holding that least restrictive means test did not bar termination simply because mother could have periodic supervised visits with child where there was no realistic possibility of reunification).  The trial court should have considered these factors in determining whether there was a significant risk of substantial harm to X.W., yet its order contains no indication that it did so.  See, e.g.,

"fundamental doctrine" that courts do not decide constitutional questions unless necessary).

- 13 -

B.C. v. Dep't of Children & Families, 887 So. 2d 1046, 1054 (Fla. 2004) (holding that although rights may not be terminated based solely on the length of a parent's incarceration, "the actual effect of incarceration on the parent child relationship" must be considered in light of the statutory and constitutional requirements for termination).

Turning to the trial court's findings on least restrictive means, the proper inquiry is whether there are measures short of termination that would "permit the safe re-establishment of the parent-child bond." S.M., 202 So. 3d at 778-79 (quoting B.B., 824 So. 2d at 1009). In ordinary circumstances, there should be an effort to rehabilitate the parent and reunite the family, such as through a case plan, before rights are terminated. S.H., 49 So. 3d at 854. The welfare of the child, however, is paramount: The least restrictive means test "is not intended to preserve a parental bond at the cost of a child's future." S.M., 202 So. 3d at 778 (quoting B.B., 824 So. 2d at 1009).

Here, the trial court found that the least restrictive means test was not satisfied because, although C.W. has been provided a case plan, his incarceration has prevented him from complying with it and receiving the benefit of services. As the GAL correctly points out, however, this is not the ordinary case in which the law requires an opportunity to comply with a case plan. Initially, section 39.806(2) provides that "[r]easonable efforts to preserve and reunify families are not required if a court of competent jurisdiction has determined that any of the events described in paragraphs (1)(b)–(d) or paragraphs (1)(f)–(m) have occurred." Thus, a case plan with a goal of reunification is not required where, under section 39.806(1)(m), a child has been conceived as the result of an unlawful sexual battery. See D.A.D. v. Dep't of Children & Family Servs., 903 So. 2d 1034, 1040 (Fla. 2d DCA 2005) (holding that when a ground for termination listed in section 39.806(2) is proved, the department "is not required to

- 14 -

offer the parent a case plan with a goal of reunification").  Likewise, the supreme court has recognized that in "extraordinary circumstances," termination of parental rights without the use of case plans is the least restrictive means.  In re T.M., 641 So. 2d 410, 413 (Fla. 1994) (holding that statutory provisions dispensing with a case plan in cases of serious abuse or egregious conduct do not violate the least restrictive means test).  We are confident that in cases like this one—involving the sexual battery of an eleven-year-old resulting in the conception of a child—such extraordinary circumstances exist.

Moreover, even if a case plan would ordinarily be required in a case involving an unlawful sexual battery, it would not be required here.  The least restrictive means test requires an opportunity to comply with a case plan for the purpose of permitting the "safe re-establishment of the parent-child bond."  S.M., 202 So. 3d at 779 (quoting B.B., 824 So. 2d at 1009).  That, of course, presupposes that there is a parent-child bond for a case plan to reestablish.  Here, the trial court expressly found that "there is no significant love, affection or emotional ties" between C.W. and X.W. due to C.W.'s incarceration.  That finding was supported by competent substantial evidence; C.W. has been incarcerated since X.W. was born.  Given that finding, the least restrictive means test does not preclude the termination of parental rights.  See S.S. v. Dep't of Children & Family Servs., 891 So. 2d 1068, 1070 (Fla. 2d DCA 2004) (affirming termination of parental rights where child had been in custody of and had established a bond with maternal aunt and there was "little or no bond to protect and there was never a parent-child relationship to reestablish"); F.L.C. v. G.C., 24 So. 3d 669, 671 (Fla. 5th DCA 2009) ("Here, the trial court specifically found that the father did not have a meaningful father/child bond with either of his two sons.  Where there is little or no bond

- 15 -

to protect and there was never a parent/child relationship to re-establish, termination of parental rights is not barred by the application of the least restrictive means test.").

III.

The findings the trial court made to support its conclusion that the statutory presumption that termination of C.W.'s parental rights is not in X.W.'s manifest best interests were not supported by competent substantial evidence. The trial court's findings concerning harm neglected to account for the evidence before it, and its findings concerning least restrictive means were legally mistaken. We reverse the order denying the GAL's petition to terminate parental rights and remand the case with directions to the trial court to reconsider whether X.W. is subject to a substantial risk of significant harm and to enter a new final order on the GAL's petition in light of its findings. If it is helpful for the court to consider additional evidence on the question of harm, it is free to do so.[7]

Reversed and remanded with directions.

KHOUZAM and LUCAS, JJ., Concur.

---

[7]To the extent the trial court's reconsideration of the constitutional requirement of harm also bears on its determination that the GAL failed to prove a statutory ground for termination under section 39.806(1)(g), it may also reconsider that determination.